VITO CURRELLI *vs.* CHARLES S. JACKSON.

Third Judicial District, Bridgeport, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action against an employer for negligence in furnishing the plaintiff, an employee, with frozen dynamite, an allegation in the complaint that the defendant knew of the condition of the dynamite is sustained by proof of either actual or constructive knowledge upon his part.

The case of *Downs* v. *Seeley,* 76 Conn. 317, distinguished.

It is the duty of the employer to furnish his employee with material which is reasonably safe; and this duty is neglected if he furnishes material which he either knows or ought to know is not reasonably safe, and of the dangerous condition of which the employee is ignorant and has not equal means of knowledge.

The requirement of a license for the use of explosives, under General Statutes, §§ 2617–2622, does not apply to a laborer working under the direction of an employer,

Currelli *v.* Jackson.

An allegation that one of the plaintiff's eyes was injured so that it had to be removed, is broad enough to admit evidence that the artificial eye inserted caused pain; and under an allegation that a piece of the ulna was blown out, evidence that the arm at that point would be more likely to ulcerate and require longer to heal, is admissible.

A question may be excluded on cross-examination if it involves an improper assumption.

An expert may testify that tamping dynamite in a certain manner is. dangerous and opposed to sound practice.

No wilful or wanton misconduct being alleged and all right to punitive damages being disclaimed, a question put to the defendant as to whether he honestly believed the plaintiff was capable of using dynamite was properly excluded.

One of the defendant's witnesses having testified that hardness from freezing was not a defect in dynamite, a question as to when dynamite is defective is irrelevant.

A witness who has had only one experience with frozen dynamite is not qualified to answer the question whether, from his experience and reading, such dynamite is more liable to explode under pressure than dynamite in a plastic condition.

Argued April 19th—decided August 12th, 1904.

ACTION for damages for personal injuries alleged to have been caused by defendant's negligence in furnishing defective dynamite to be used by plaintiff, brought to the Superior Court in Fairfield County and tried to the jury before *Gager, J.;* verdict and judgment for plaintiff, and appeal by defendant. *No error.*

The complaint alleges that the defendant was a contractor engaged in the work of repairing certain highways, and that the plaintiff, while in his employ, was injured by the explosion of dynamite which the plaintiff, in the exercise of due care and under the orders of the defendant, was loading into a hole drilled in a rock for the purpose of blasting; that the dynamite supplied by the defendant and which the plaintiff was required to use for said purpose "was in a dangerous and defective condition, in that it was hard and liable to explode when subjected to pressure," and that "the condition of said dynamite as aforesaid was known to the defendant, who negligently allowed it to remain subject to the use of the plaintiff, and did not give instructions as

to its proper use to the plaintiff, who was ignorant and without special skill and experience, nor warn him as to its dangerous condition."

The plaintiff offered evidence to prove these facts: The plaintiff is an Italian but slightly acquainted with the English language. Prior to the accident he had been in the employ of the defendant as a laborer, and had so worked until directed by the defendant to do blasting with dynamite. He had never used dynamite, nor seen it used, until he entered the defendant's employ, several weeks before the accident, and had no knowledge of its nature and qualities, or of its proper use, or of the danger attending its use, and had never used hard dynamite until the time of the accident.

On the day of the accident the defendant, who was a contractor engaged in the work of repairing and improving certain highways, directed the plaintiff to set off a blast in a certain rock. The plaintiff, upon going to the box in which the dynamite was kept by the defendant, found that the soft dynamite, which had been before provided for his use, was gone, and that only frozen dynamite remained. Through an interpreter he informed the defendant that such dynamite could not be compressed and used in the manner he had been instructed to use it, and the defendant told the plaintiff to use the hard dynamite, and that it was all right to use it. The plaintiff thereupon proceeded to use the hard dynamite, and while endeavoring to insert it in the drill-hole as he had been instructed by the defendant, the dynamite exploded and injured him as described in the complaint.

The dynamite so used by the plaintiff was in a dangerous condition from being frozen, and was for that reason more liable to explode than soft or plastic dynamite. The dangerous condition of such frozen or hard dynamite is well recognized by scientific authorities, and is well known and generally recognized by persons familiar with the nature and qualities of dynamite and the proper way of using it in blasting, and was known, or by the exercise of due care

should have been known, by the defendant. The using of frozen dynamite, as the defendant ordered the plaintiff to use it, was a highly dangerous operation, as was well known to experienced users of dynamite, and opposed to all sound practice, and the danger of so using it was so great and so well recognized that the defendant ought to have known it in the exercise of ordinary care in the conduct of his business.

The plaintiff had no knowledge of the danger attending the use of frozen dynamite, and did not hold himself out to the defendant as possessing experience in the use of dynamite, and the defendant had no reason to believe that the plaintiff had such knowledge. The defendant gave the plaintiff no warning of the danger of using said frozen dynamite.

The defendant claimed to have proved that frozen dynamite was less liable to explode when subjected to a pressure then soft dynamite; that the defendant did not know, and had never heard, that the use of frozen dynamite by subjecting it to a pressure was dangerous; that such danger, if it existed, was wholly unknown to prudent men of many years' practical experience in the use of dynamite; that the plaintiff was experienced in the use of dynamite for blasting; that he used said hard dynamite contrary to defendant's orders and without defendant's knowledge; that in loading said blast the plaintiff carelessly used a crowbar in tamping the charge, while knowing that the use of such an instrument was dangerous; and that the plaintiff at the time of the accident was using such dynamite without having obtained a written permit or license therefor from the town clerk or selectmen, as required by statute.

The defendant, among other things, requested the court to charge the jury that to entitle the plaintiff to recover he must prove that the alleged dangerous condition of the dynamite was known to the defendant; and that if the plaintiff at the time of the accident was using dynamite without having first obtained a written permit therefor, as required by statute, such use of the dynamite was illegal,

and the failure to obtain such permit was a bar to his recovery.

The jury rendered a verdict for the plaintiff for $3,000.

*Samuel Tweedy* and *Leonard J. Nickerson*, for the appellant (defendant).

*Granville Whittlesey* and *J. Moss Ives*, with whom was *Eugene C. Dempsey*, for the appellee (plaintiff).

HALL, J.   One of the reasons of appeal assigned is, that the trial judge erred in instructing the jury that under the allegation of the complaint the plaintiff was not required to prove that the defendant " as a matter of fact " knew of the dangerous condition of the dynamite; that the defendant was " chargeable with the knowledge of the ordinarily prudent and careful man in handling a dangerous substance like dynamite, and is (was) chargeable with the knowledge of its varying qualities and dangers under conditions as they are likely to occur in ordinary use ; provided however, that those changes and those dangers are such and so manifest that the ordinarily prudent user of such materials should be held bound to know them ; " that " the danger, the knowledge of which is chargeable to the defendant whether he knew it or not, must be a danger attending the use of dynamite that is recognized and understood in the ordinary conduct of a business like that in which the defendant is engaged, as such business is conducted by the ordinarily careful, skillful and prudent man in the business."

The criticism made of this part of the charge is that it authorized the jury to find constructive knowledge by the defendant of the dangerous condition of the dynamite, under the allegation of the complaint that such condition of the dynamite " was known to the defendant, who negligently allowed it to remain subject to the use of the plaintiff, and did not . . . warn him as to its dangerous condition." This objection is apparently based upon the decision of this court in *Downs* v. *Seeley*, 76 Conn. 317, 321, that an allega-

tion of knowledge of the defendant—in that case of the defective construction and condition of the cables of an elevator—without a specific allegation of imputed knowledge, or of facts from which such imputed knowledge might be inferred, did not impose upon the defendant, in a hearing in damages after a default, the burden of proving the nonexistence of every fact which might show constructive knowledge. In other words, that the admission by the default of the mere allegation of knowledge was of actual knowledge, and was not an admission of actual and constructive knowledge which required the defendant to disprove both. A clear distinction is made in that case between the right of the plaintiff to prove constructive knowledge, under an allegation of knowledge, when such allegation is denied, and the burden imposed upon the defendant in a hearing in damages by his admission of such an allegation by suffering a default. The real ground of the present action is the alleged negligence of the defendant in furnishing, for the use of the plaintiff, his employee, dynamite, which, from its frozen condition, was liable to explode when subjected to pressure, without warning the employee of such danger in using it. It was the duty of the employer to exercise reasonable care to put reasonably safe materials in the hands of its employee to be used in the work in which he was engaged. *O'Keefe* v. *National Folding Box & Paper Co.*, 66 Conn. 38, 47. The employer neglects such duty if he places in the hands of his employee materials which he either knows or ought to know are not reasonably safe for the work which the employee is performing, and of the dangerous condition of which the employee is ignorant and has not equal means of knowing. *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548, 560. The plaintiff was required to allege that the defendant had neglected such duty, and this he did by averring that the defendant, a contractor, etc., furnished the frozen dynamite with knowledge of its dangerous condition, of which the plaintiff, who was inexperienced in the use of dynamite, was ignorant. As proof of the employer's knowledge of the alleged defect in materials, for the purpose of showing his neglect of such

duty, the law treats either actual or constructive knowledge as knowledge. It imputes to the employer knowledge of a fact of which the exercise of reasonable care and diligence would have apprised him. *Peters* v. *Goodrich*, 3 Conn. 146, 150; *Post* v. *Clark*, 35 id. 339, 342. The defendant had full opportunity to meet the facts showing imputed knowledge, and endeavored to disprove them. Certainly, proof of constructive knowledge of the alleged defect charged the defendant with no greater negligence or liability than proof of actual knowledge. We regard the allegation of knowledge contained in the complaint as broad enough to permit proof either of actual knowledge, or of that constructive knowledge which the law treats as its equivalent. *Mellors* v. *Shaw*, 1 Best & Smith, 437; *Lake Erie & W. R. Co.* v. *McHenry*, 10 Ind. App. 525; *Evansville & T. H. R. Co.* v. *Duel*, 134 Ind. 156, 165; *Louisville, etc., R. Co.* v. *Miller*, 140 id. 685. When a plaintiff is required to allege that he had no knowledge of the defect or danger complained of, he need not allege that he could not have known it by the exercise of ordinary care. *Peter & M. S. Stoneworks* v. *Green*, 76 Southwestern Rep. (Ky.) 844. Under an allegation of no knowledge, proof of want of actual knowledge may be met by evidence of facts showing imputed knowledge. *Salisbury Savings Soc.* v. *Cutting*, 50 Conn. 113, 120. There was no error in the charge of the court that imputed knowledge might be proved in support of the averment of knowledge.

The trial court also correctly instructed the jury that " the failure of the plaintiff to take out a permit for the use of dynamite has nothing whatever to do with this case," and should not be considered by the jury as having any bearing upon their conclusion. Section 2618 of the General Statutes, which provides that " no person shall procure, transport, or use any compound more explosive than gunpowder without first obtaining a written permit therefor, signed by the town clerk or selectman of the town where the same is to be used or kept for sale, specifying the name of the purchaser, the amount to be purchased, and purpose for which it is to be used," and § 2622 providing that any person who

shall manufacture, transport, use, or have in his possession such explosive shall be fined not more than $10,000, or imprisoned not more than ten years, or both, are parts of an Act passed in 1885 (Public Acts of 1885, p. 519, Chap. 114), the first and second sections of which appear in §§ 1183 and 1140, respectively, and the remainder of the Act in §§ 2617 to 2622 of the General Statutes. The original Act made it a felony for any person to wilfully injure person or property by any explosive material or compound, or to manufacture, transport, have or dispose of the same, having reason to believe that it was to be used for that purpose, or to advocate or contribute money for any such use of the same. It made all murder perpetrated in attempting injury to any person or property by such explosives murder in the first degree ; required all persons manufacturing, dealing in, procuring, using, or having in their possession materials or compounds more explosive than gunpowder to obtain a written license or permit therefor, and imposed a punishment upon persons so acting without such license. The object of the Act was neither to prohibit nor restrict the manufacture, sale, or use of such explosives for legitimate purposes, but to prevent the manufacture, sale, or use of them for unlawful purposes ; and in aid of that object to require those lawfully manufacturing, selling, or using them, to have written evidence of such fact. Town clerks and selectmen are not by the Act made judges of the qualifications of applicants for licenses to properly manufacture, sell, or use explosives. The only restriction placed upon the granting of the licenses is that these officials shall be satisfied that a lawful use of the explosive is intended. If the statute in question applied to the plaintiff, who was a mere laborer employed by the person controlling the use of the explosive, his unlawful act was not the act itself of using the dynamite for blasting, but in making a lawful use of it without having procured the required permit ; and his failure to obtain the permit in no way contributed to cause his injury. *Broschart* v. *Tuttle*, 59 Conn. 1, 13 ; *Monroe* v. *Hartford Street Ry. Co.*, 76 id. 201, 207. But it is only the name of the purchaser of the

explosive which is required to be specified in the license. Assuming that the defendant was such purchaser, it was his duty to obtain a permit, and we do not think the statute requires every laborer, who handles such explosives under the direction of his employer, to procure a permit to do so.

The complaint alleged that the sight of one of the plaintiff's eyes was destroyed by the explosion, rendering it necessary to remove it; that a piece of the ulna of his left arm was blown out, causing a permanent injury and greatly impairing its use; and that by reason of said injuries the plaintiff suffered great pain. Evidence was offered that the wearing of an artificial eye had caused the plaintiff some pain, and that his arm where it was fractured would be more liable to ulcerate, and that it would require, in that case, a longer time to heal. Defendant's objection to this evidence, upon the ground that such injuries were not described in the complaint, was properly overruled.

The question by defendant's counsel upon cross-examination of the interpreter employed upon said work, whether he communicated to the plaintiff anything that was said about his using dynamite carelessly, was rightly excluded upon the ground that it improperly assumed that something of that kind had been said.

The testimony of the expert Shupphaus, that the forcing of a stick of hard or frozen dynamite into a drill-hole in a rock with a stick, requiring the use of considerable force to push it into the drill-hole, was a highly dangerous operation, opposed to all sound practice, was properly admitted. It was applicable to the explosive described in the complaint, and apparently even to the kind of dynamite which the defendant claims was used, and tended to prove the dangerous condition of the dynamite as described in the complaint, namely, that it was liable to explode when subjected to pressure.

There was no error in excluding the question asked the defendant by his counsel, for the purpose of showing that the defendant acted in good faith and not maliciously or wantonly, whether from what he observed in the plaintiff's

use of dynamite, and what the interpreter told him as to the plaintiff's experience before, he honestly believed that the plaintiff was capable of handling and using dynamite. The complaint contained no allegation of wilful or wanton conduct by the defendant. The plaintiff disclaimed such conduct by the defendant and any right to punitive damages, and the court charged the jury that only compensatory damages could be awarded.

Defendant's witness Daniel, having testified that hardness from freezing was not a defect in dynamite, and that its only effect was to prevent it from exploding, the question by defendant's counsel as to when dynamite was defective, was properly excluded as irrelevant.

Defendant's witness Baldwin, having testified that he had used dynamite in blasting for twenty years, and had had one experience with frozen dynamite, the court correctly ruled that he had not been shown to be qualified to answer the question, whether from his experience and what he had read frozen dynamite was more liable to explode when subjected to pressure than dynamite in a plastic condition.

There is no error.

In this opinion the other judges concurred.