WILLIAM MURPHY *v.* BENJAMIN OSSOLA.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 5th—decided May 5th, 1938.

*Edward Mascola* and *Hugh J. McGill,* for the appellant (plaintiff).

*Charles P. Roraback,* for the appellee (defendant).

AVERY, J. The plaintiff, a minor of the age of fifteen years, brought this action through his mother as next friend to recover damages for injuries suffered in consequence of the explosion of a dynamite cap alleged to have been caused by the negligence of the defendant. The case was tried to the jury and a verdict returned in favor of the defendant, from which the plaintiff has appealed alleging error in the charge of the court to the jury, in overruling the plaintiff's demurrer to the defendant's second special defense, and in a ruling on evidence.

The complaint alleged that the plaintiff's injuries were caused by the carelessness and negligence of the defendant in failing to provide a magazine for the storage of explosives and in storing them in a building which he owned or controlled without a permit, in

having the caps in his possession without having them under his personal observation or securely locked up, in failing to remove the explosive material from the barn when he knew or should have known that children were playing in and about it; and that the defendant by storing the dynamite caps created and was maintaining a nuisance. The defendant, after denying the allegations to the complaint and setting out, as a first defense, that there were no dynamite caps on any property over which the defendant had possession or control, alleged, as a second defense, that if the plaintiff secured the dynamite caps they were in a container clearly stating the dangerous character thereof, that the plaintiff was of sufficient intelligence to understand their character and had experience in handling them, that the caps were taken by the plaintiff without permission, while trespassing on the property of the defendant, and in so doing the plaintiff assumed the risk of any injury which might result, and that the plaintiff was guilty of contributory negligence. The plaintiff demurred to this defense and the demurrer was overruled.

At the trial, the plaintiff claimed to have proved that the defendant, a mason contractor, was part owner and in possession of a garage building at Torrington which he used to store tools and supplies used in his business, and on March 18th, 1936, he stored a small cardboard box containing fifty dynamite caps in a part of the building where also were stored tools and implements of his trade, that the defendant had no license for the storage of dynamite, that he failed to provide a magazine for the storage of the dynamite caps, that he had them in his custody or possession without having them under his personal observation or securely locked up, and that he had notice that children played upon the adjoining lot. The plaintiff, who

lived in the neighborhood, entered the building with some other boys through an unlocked door and discovered the box of caps lying on the floor and a fuse hanging on the wall. The box was not labeled to designate the dangerous character of the explosive. The boys took the fuse and caps to a barn on premises occupied by the plaintiff's mother. They exploded a number of the caps by means of short pieces of fuse and on the day following the plaintiff, while exploding one of the caps, was injured. The defendant, on the other hand, claimed to have proved that he owned no dynamite caps and that the place where the plaintiff claimed the caps were found was in a part of the building not under his control.

The plaintiff requested the court to charge the jury that if they found that the defendant was the owner of the dynamite caps and had them in his possession without having first obtained permission from the authorities authorized by law to grant such a permit, in that case the defendant was maintaining a nuisance and the plaintiff would be entitled to recover even if the jury found he was guilty of contributory negligence; and that under such circumstances the right of the plaintiff to recover could only be defeated if the jury found he was guilty of "wanton, wilful, or careless conduct" which materially contributed to produce the injury. As this request stood it did not mean what plaintiff's counsel probably intended. The word careless means no more than negligent and is not legally synonymous with wanton or wilful, which was probably what counsel had in mind. *Loethscher* v. *Campo,* 107 Conn. 568, 571, 141 Atl. 652. Be that as it may, however, the court informed the jury that they were not concerned with whether the defendant had procured a license for the storage of explosives or not, but that this matter concerned the State and the de-

fendant; but the court further informed the jury that if they found the defendant had this explosive material in his possession it was his duty to have it under his personal observation or securely locked up, and failing to do so would be negligence as a matter of law, and that if such negligence was the proximate cause of the plaintiff's injuries, the plaintiff would be entitled to recover. Later on the court stated to the jury: "I will define nuisance to you so you may not only understand what it is but its relative significance. If you find the defendant was the owner of a dynamite cap, such as the one introduced in evidence and the one claimed to be present in the garage in question, then I charge you as a matter of law he was guilty of negligence, and if you further find that the defendant had this explosive in his possession, without having it under his personal observation or securely locked up, as required by the statute, then I charge you that he was maintaining a dangerous object which under the law constitutes a nuisance. If you find those things are so the plaintiff would be entitled to recover even if you find that the plaintiff was negligent. Under those circumstances the plaintiff could only be barred from a recovery if you find he was guilty of wanton conduct materially contributing to his injury."

The whole case of the plaintiff is based on the theory that the possession or use of dynamite caps constitutes a nuisance as a matter of law. There are decisions which appear to so hold. The rule in this State, however, which we believe finds support in the better reasoned cases, is that the mere possession or use of such explosive does not constitute a nuisance per se without regard to the manner of its use or keeping; but that the question depends upon the locality, the quantity and all the surrounding circumstances. *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 527,

28 Atl. 32; *Alexander* v. *Sherman's Sons Co.,* 86 Conn. 292, 298, 85 Atl. 514; *Pope* v. *New Haven,* 91 Conn. 79, 83, 99 Atl. 51; *Worth* v. *Dunn,* 98 Conn. 51, 59, 118 Atl. 467; *Loethscher* v. *Campo,* 107 Conn. 568, 571, 141 Atl. 652; *Welz* v. *Manzillo,* 113 Conn. 674, 682, 155 Atl. 841; *Henderson* v. *Sullivan,* 159 Fed. 46, 53; *Flynn* v. *Butler,* 189 Mass. 377, 385, 75 N. E. 730, 731; *Forster* v. *Rogers Bros.,* 247 Pa. St. 54, 57, 93 Atl. 26; *Whaley* v. *Sloss-Sheffield Steel & Iron Co.,* 164 Ala. 216, 225, 51 So. 419; 46 C. J. 703. Under some circumstances the danger to others would be so obvious and inevitable as to constitute the possession or use of the explosive an absolute nuisance as a matter of law. Usually, however, like the question of negligence, the existence of a nuisance is a question of fact. If an absolute nuisance were shown or if the jury found that the intrinsically dangerous substance, such as dynamite caps, had been stored or kept by the defendant in such a way as necessarily and obviously to expose the plaintiff to injury, then no negligence of the defendant need be proved and contributory negligence upon the part of the plaintiff would not constitute a defense. *Worth* v. *Dunn,* 98 Conn. 51, 60, 118 Atl. 467. However, wanton, wilful or reckless misconduct which materially increased the probabilities of injury and contributed thereto would defeat the plaintiff's right of recovery. *Loethscher* v. *Campo,* 107 Conn. 568, 571, 141 Atl. 652. So also the defense of assumption of the risk, if pleaded and established, would be available as a bar to such an action. *Freedman* v. *Hurwitz,* 116 Conn. 283, 287, 164 Atl. 647. If, on the other hand, the jury found that the manner in which the explosive was stored or kept did not necessarily and obviously expose the plaintiff to danger, or found that the nuisance arose from negligence, a finding of contributory negligence would bar

the plaintiff from recovery. *Hoffman* v. *Bristol,* 113 Conn. 386, 393, 155 Atl. 499; *Hill* v. *Way,* 117 Conn. 359, 364, 168 Atl. 1.

The applicable statute in regard to explosives is set out in the footnote.[1] General Statutes, Cum. Sup. 1935, § 1008c. This statute was first adopted in 1885. Pub-

[1] STORAGE, TRANSPORTATION AND USE OF EXPLOSIVES. (a) The commissioner of state police is directed to prepare and enforce reasonable regulations for the safe and convenient storage, transportation and use of explosives as defined in section 2638, which regulations shall deal in particular with the quantity and character of explosives to be stored, transported and used, the proximity of such storages to inhabited dwellings, public highways and railroad tracks, the character and construction of suitable magazines for such storage and the abatement of any other hazards that may arise incident to the storage, transportation and use of such explosives. (b) No person shall manufacture, keep, store, sell or deal in any explosives or any material or compound manufactured as defined in said section 2638 unless he shall first obtain from the commissioner of state police or from the fire marshal of the town where such business is conducted a written license therefor which shall not be valid for more than one year and for which he shall pay a fee of five dollars to the authority granting such license. Such license so granted shall definitely state the location of the building where such business is to be carried on or such explosive deposited and shall state that such building or premises complies with the regulations provided for in this section. (c) No person shall procure, transport or use any explosives defined in said section 2638 without first obtaining a written permit therefor signed by the commissioner of state police or fire marshal of the town where such explosive is to be used, specifying the name of the purchaser, the amount to be purchased and transported and the purpose for which it is to be used. * * * * No carrier shall transport any such explosive unless such written permit shall accompany the same and no person shall have in his possession any such explosive unless he shall have a license or permit therefor. The fee for such permit shall be twenty-five cents. Each person who shall have in his custody or possession any explosive or any detonating caps for explosives shall keep the same either under personal observation or securely locked up. (d) Any person who, by himself or by his servant or agent or as the servant or agent of another, shall violate any provision of this section or any regulation made by the commissioner of state police pursuant to the provisions of this section, shall be fined not more than five hundred dollars or imprisoned not more than one year or both.

lic Acts, 1885, Chap. 114, p. 519. Various amendments have been made to it from time to time, but subsections b and c have always appeared as separate sections. A much higher license fee has always been required for the manufacture and sale of explosives as provided for in subsection b than for the transportation and use thereof as provided for in subsection c. Chapter 114 of the Public Acts of 1885 began with a provision which made it a crime to manufacture, transport or dispose of explosives by one who intended or had reason to believe that they were to be used to injure person or property; it broadened the definition of first degree murder to include murder committed in perpetrating or attempting to perpetrate injury to person or property by means of any explosive compound; it then went on to require that any person manufacturing, selling or dealing in certain explosives must first obtain a permit and must keep a record of explosives sold, with a statement of the amount and purpose for which they were to be used, and prohibited the sale to any person not having a permit and unless the seller was satisfied they were to be used for a lawful purpose; and it required every person procuring, transporting or using explosives to have a permit stating the purpose for which they were to be used.

We considered this statute in *Currelli* v. *Jackson*, 77 Conn. 115, 121, 58 Atl. 762. It was there pointed out (p. 122) that the object of the statute was "neither to prohibit nor restrict the manufacture, sale, or use of such explosives for legitimate purposes, but to prevent the manufacture, sale, or use of them for unlawful purposes"; and we said: "If the statute in question applied to the plaintiff, who was a mere laborer employed by the person controlling the use of the explosive, his unlawful act was not the act itself of using

the dynamite for blasting, but in making a lawful use of it without having procured the required permit; and his failure to obtain the permit in no way contributed to cause his injury." The provisions of the present statute, giving the commissioner of the state police power to make and enforce reasonable regulations as to the quantity and character of explosives to be stored, transported or used, the proximity of such storages to inhabited dwellings, highways and railroad tracks, the character and construction of suitable magazines for such storage, and the abatement of hazards incident to it, indicate that one of its purposes was to minimize the danger to persons and property from the improper storage of explosives, and that the provisions for a permit to be secured by any person who manufactures, stores or deals in explosives, stating the location where they are to be kept and that it complies with the regulations of the commissioner, were a means to accomplish that purpose. If they are not kept in a place which complies with the regulations and injury proximately results from that fact, the violation of the regulations might constitute negligence. *Hyde* v. *Connecticut Co.*, 122 Conn. 236, 239, 188 Atl. 266. But the proximate cause of the injury in such a case would be conduct which was in violation of the regulations and not a failure to secure a permit. *Gonchar* v. *Kelson,* 114 Conn. 262, 266, 158 Atl. 545. The defendant was not within the class of persons required to secure a permit under subsection b of the law as a manufacturer or dealer and his failure to secure a permit to procure, transport or use dynamite, required under subsection c, cannot be considered as contributing to the plaintiff's injury. *Currelli* v. *Jackson,* supra. The provision of subsection c requiring the possessor of explosives or detonating caps for explosives to keep them under personal observation or

securely locked up was inserted in the statute by amendment in 1935. The violation of a rule prescribed by the Legislature such as the part of the statute added by the amendment of 1935, requiring a certain course of conduct for the protection of third parties, is negligence of itself and when it is the proximate cause of injury is actionable negligence, and the court so charged. *Pietrycka* v. *Simolan,* 98 Conn. 490, 495, 120 Atl. 310; *Wolfe* v. *Ives,* 83 Conn. 174, 177, 76 Atl. 526. It follows that the instructions of the trial court upon the question of negligence and in regard to nuisance were, if anything, too favorable to the plaintiff.

In his brief the plaintiff claims that the defendant was a joint owner or tenant in common of the building and therefore should be held to be in possession of the entire property and that the court erred in the charge in confining the duty of the defendant to the portion of the garage of which the defendant was in possession. This point was not fairly raised by any of the plaintiff's requests for a charge nor was error assigned in the instructions of the court in this regard. In view of the brief excerpts which appear in the printed record reversible error cannot be predicated upon this claim.

The plaintiff claims error in overruling the demurrer to the second defense. The substance of this defense was that the plaintiff was a trespasser upon defendant's premises and stole the caps and was guilty of contributory negligence. It does not appear from the defendant's claims of proof that any issue was made at the trial that the defendant was not a trespasser. The issue of contributory negligence was in the case in any event because of the allegation of want of it in the complaint and the denial thereof in the answer and this was dealt with in the charge.

As any of the various matters set forth in the second defense might have been proved as defenses under some phase of the case as alleged in the complaint, the plaintiff cannot predicate reversible error upon the overruling of his demurrer to that defense.

It remains to consider the ruling on evidence. The plaintiff presented a witness and stated that the witness would testify that while working with the defendant one day the latter stated: "I have been sued. It is about a boy who was injured and sued me for fifty thousand dollars. If he had come to me or if his mother had come to me, I would have paid him some of the expenses. It may cost me something, but it will not cost me fifty thousand dollars." This testimony was offered by the plaintiff as an admission and on objection by the defendant was excluded. The most that can be made out of this statement was that the defendant would have done something if the mother of the boy had asked him; whether from motives of charity or a desire to compromise or as an admission of liability is mere speculation and the trial court did not err in excluding the testimony.

There is no error.

In this opinion the other judges concurred.