LOUIS TOFFOLON *v.* ZONING BOARD OF APPEALS OF THE TOWN OF PLAINVILLE ET AL.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 5—decided November 21, 1967

*James H. Throwe,* with whom was *Samuel H. Teller,* for the appellant (plaintiff).

*Walter H. Scanlon,* for the appellee (named defendant).

*Wallace R. Burke* appeared for the appellee (defendant Hayden).

COVELLO, J. The plaintiff is the owner of premises located in an industrial zone on Neal Court in the town of Plainville. The building inspector of the town, who is the zoning enforcement officer, made an investigation of the plaintiff's activities and determined that the plaintiff was manufacturing explosives on his premises in violation of the zoning regulations. On December 27, 1965, the building

inspector issued an order directing the plaintiff to cease the illegal manufacturing process immediately. The plaintiff appealed from the order of the building inspector to the zoning board of appeals, hereinafter referred to as the board, and, from the action of the board sustaining the order of the building inspector, he appealed to the Court of Common Pleas, which dismissed his appeal.

The plaintiff makes two claims: (1) The board in sustaining the action of the building inspector acted illegally and arbitrarily. (2) The vote of the board sustaining the order of the building inspector was not validly taken. Section 6 of the zoning regulations of the town of Plainville prohibits in an industrial zone the use of any building or premises for the manufacture or storage of explosives. Section 19 of the regulations provides that the board, after public notice and hearing, may hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the building inspector in the enforcement of the regulations. Accordingly, the zoning regulations, as well as § 8-6 of the General Statutes, entrust to the board the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section and applied it with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals*, 150 Conn. 113, 116, 117, 186 A.2d 377; *Stern* v. *Board of Zoning Appeals*, 140 Conn. 241, 244, 99 A.2d 130. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject

to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594.

From the evidence the board could have found that the plaintiff's process consists of the assembling of small arms ammunition. The plaintiff manufactures the cartridge shells. He purchases in bulk the necessary powder and, without modifying it other than by dividing it into small quantities, loads the cartridge shells with the powder and projectiles. The powder was identified as "improved military rifle" powder by a witness for the plaintiff. He characterized it as a highly combustible propellant not within the explosive class. At the hearing, the building inspector maintained that the powder used by the plaintiff was an explosive and supported his opinion by an encyclopedia article on explosives, which discussed high and low degrees or classes of explosives. Prior to the hearing, the board had viewed the plaintiff's premises and operations on Neal Court. The board members also knew that five months earlier the board had upheld a determination by the building inspector classifying the same material as a class B explosive and had granted to the plaintiff a variance permitting the storage of that material. The board was not required to accept the highly technical distinction of the plaintiff's witness between a propellant and an explosive. The board could reasonably have concluded that the rapid burning of the powder and gas expansion, which produced the propelling force inside the cartridge, brought the powder within the classification of an explosive. Its action in sustaining the order of the building inspector cannot be held to have been illegal or arbitrary.

The plaintiff claims that the board, in determining whether the use to which he put his premises constituted the manufacture of explosives, was bound to employ the definition of explosives set forth in § 29-83 of the General Statutes. Section 29-83 defines "explosive" as "any chemical compound or any mechanical mixture that contains oxidizing and combustible units or other ingredients in such proportions, quantities or packing that ignition by fire, friction, concussion, percussion or detonator may cause such a sudden generation of highly heated gases that the resultant gaseous pressure is capable of destroying life or limb or of producing destructive effects to contiguous objects." The statute further provides that manufactured articles shall not be held to be explosive when the individual units contain explosives in such limited quantity, of such nature or in such packing that it is impossible to produce a simultaneous or a destructive explosion of such units to the injury of life, limb or property, including fixed ammunition for small arms. The plaintiff claims that, because the end product of his operation is within the statutory exception, the board could not have found that he was using his premises for the manufacture of explosives. With this claim we do not agree. Section 29-83 expressly limits the application of the definition to General Statutes §§ 29-84 to 29-89, inclusive. These statutes are intended to regulate the manufacture, sale, storage, transportation or use of explosives and to minimize the danger to persons and property from the improper storage and use of explosives. *Murphy* v. *Ossola,* 124 Conn. 366, 374, 375, 199 A. 648; *Currelli* v. *Jackson,* 77 Conn. 115, 122, 58 A. 762. They regulate, not every type of explosive, but only those defined. The exception in the statute

does not mean that cartridges are not explosives but only that cartridges are not subject to the provisions of those statutes. This definition is applicable only to the statutory provisions. It does not control the power of a municipality to determine by zoning regulations the areas of a town within which the manufacture of explosives may be prohibited. In §§ 29-91 and 29-92 gunpowder is recognized to be an explosive, although it is excluded from their provisions. By the terms of the statutory definition, the manufacture of small arms ammunition may be beyond the scope of these licensing regulations, a point, however, which we do not expressly decide. But even if that is so, it can be of no help to the plaintiff, for he is subject to the local zoning regulations which pertain to the uses which may be made of land and are concerned, inter alia, with the conserving of the value of buildings and appropriate uses of land. General Statutes § 8-2.

The plaintiff makes the further claim that even if the powder used by him was an explosive, nevertheless he was not engaged in the manufacture of explosives. "Manufacture" has been defined as "the process or operation of making wares or other material products by hand or by machinery." Webster, Third New International Dictionary; see *American Sumatra Tobacco Corporation* v. *Tone,* 127 Conn. 132, 138, 139, 15 A.2d 80; *Perkins* v. *Coffin,* 84 Conn. 275, 309, 79 A. 1070. The operation engaged in by the plaintiff consisted of the manufacture of cartridge shells and the insertion into those shells of powder and the other necessary ingredients for a finished product. We conclude that this constitutes the manufacture of small arms ammunition, which the board concluded was an

explosive within the meaning of § 6 of the zoning regulations.

The other major claim of the plaintiff is that in the determination of his appeal the board voted on the question on several separate occasions and that the last vote taken was invalid. The minutes of the executive session of the board disclose the following: The board met in executive session on January 10, 1966, and unanimously voted to uphold the decision of the building inspector and to deny the appeal since it was its opinion that smokeless powder is a class B explosive. After some further discussion, the board voted to reverse its previous decision upholding the order of the building inspector since it was the opinion of the board that no evidence was offered at the public hearing that the material used in the manufacturing process would explode. Thereafter some discussion ensued concerning the efficacy of the second vote, and the meeting was recessed in order that the board might obtain an opinion from the town counsel on that point. The meeting was reconvened on January 18, 1966, when the board voted to rescind the second vote of January 10, 1966, which had reversed the vote of the board upholding the order of the building inspector. Thereafter the board voted to reconsider the first motion of January 10, 1966, upholding the action of the building inspector. The plaintiff's appeal was then tabled pending an opinion from the town attorney regarding the legality of the application and the legal notice, and the meeting was again recessed. The session was reconvened on January 22, 1966, when the board unanimously voted that "all motions subsequent to the original motion made at the executive session in January 10, 1966 be withdrawn." While this method of reconsideration was

inartificially stated, the intention of the board is clear. The board's undoubted intention was to leave in effect the vote of January 10, 1966, upholding the order of the building inspector.

Although the board met on three different dates, the three meetings constituted but one session of the board. Its deliberation on the matter was not concluded until January 22, 1966. Prior to that date the session of January 10 was not adjourned, there was no announcement of the board's decision, and no rights of any party intervened. We are not here concerned with a situation in which a board has duly taken final action on a matter and has thereafter entertained an application for a rehearing. See cases such as *Mynyk* v. *Board of Zoning Appeals,* 151 Conn. 34, 36, 193 A.2d 519; *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 137, 154 A. 343. In the present case there was but one session of the board and one announcement of its decision. When the meeting was recessed on January 10 and again on January 18, the board members were aware that no final decision had been reached on the plaintiff's appeal and that there would be further deliberations on that matter. The rule in such situations is that, unless some right of a third person intervenes, all deliberative bodies have a right to reconsider their proceedings during a session as often as they think proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done. *Neill* v. *Ward,* 103 Vt. 117, 153 A. 219; *Mansfield* v. *O'Brien,* 271 Mass. 515, 171 N.E. 487; 67 C.J.S. 876, Parliamentary Law, § 5f; see also *Strain* v. *Mims,* 123 Conn. 275, 283, 193 A. 754.

It does not appear that the board had any improper motive in recessing, rather than adjourn-

ing, the session on either January 10 or January 18, or that the recesses were unreasonable in duration. Indeed, it appears that the board was making an effort to carry out its duties in accordance with the law. The proceedings on the plaintiff's appeal were not terminated prior to January 22, 1966. The several votes were but steps taken toward a single, final decision. We conclude that the board in arriving at its decision did not follow improper procedure.

There is no error.

In this opinion the other judges concurred.