[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, C.C.S., Inc. (CCS), appeals from a decision of the defendant, the Planning Commission of the City of Norwalk (commission), in which the defendant denied the plaintiff's subdivision application.
On March 22, 1996, CCS filed an application with the commission, seeking to subdivide a 9.22-acre lot into 47 lots. (Return of Record [ROR], Item 1). The commission conducted a public hearing on the matter on May 8, 1996; (ROR, Items 28; 29); and it held a meeting on July 9, 1996, at which the members of the commission unanimously voted to deny the application. (ROR, Items 45; 46). The commission notified CCS of the decision by letters dated July 10, 1996 and July 15, 1996, respectively; (ROR, Items 47; 48); and CCS commenced an appeal from the denial of the application on July 22, 1996.
General Statutes § 8-28 provides, in part, that "[a]ny appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8."
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996).
CCS alleges that it is a Connecticut corporation and that it is the contract purchaser for a parcel containing 9.2 acres owned by the Estate of George J. Fodor and the Estate of John S. Fodor. (Appeal, ¶ 1). CCS alleges it is aggrieved in that it was the subdivision applicant, the contract purchaser of the property, it has incurred substantial expenses in attempting to subdivide the CT Page 10369 property, and it will sustain financial loss if it is unable to subdivide the property. (Appeal ¶ 13). The record contains a letter stating that the executor of the George J. Fodor estate and CCS have entered into a contract of sale, and the executor has no objection to CCS filing the proposed subdivision. (ROR, Item 2). On May 20, 1997 the court found that CCS was aggrieved as the contract purchaser of the property. See, e.g., Shapero v.Zoning Board, 192 Conn. 367, 376, 472 A.2d 345 (1984) (contract purchaser has sufficient property interest to maintain standing to apply for special exception or zoning variance.).
General Statutes § 8-28 provides that notice of a planning commission's official action or decision "shall be published in a newspaper having a substantial circulation in the municipality within fifteen days after such action or decision[,]" and that an appeal from an action or decision of such commission shall be taken pursuant to General Statutes §8-8.
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Section 8-8 (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The record reflects that the commission rendered its decision on July 9, 1996; (ROR, Items 45; 46); and that legal notice of the denial was published in The Hour on July 18, 1996. (ROR, Item 49). On July 22, 1996, CCS commenced the appeal by service of process of the citation, appeal, and recognizance with surety on the town clerk of Norwalk, the city clerk of Norwalk, and the chairman of the planning commission of the city of Norwalk.
The appeal was commenced in a timely manner by service of process upon the proper parties.
A planning commission, "in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity. . . ." (Internal quotation marks omitted.) Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988). "The planning commission, acting CT Page 10370 in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved. . . ." (Citations omitted; internal quotation marks omitted). Id. The commission is empowered to interpret and apply its zoning regulations. Gorman Construction Co. v. Planning ZoningCommission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994), citingToffolon v. Zoning Board of Appeals, 155 Conn. 558, 560,236 A.2d 96 (1967).
"The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) Gorman Construction Co. v. Planning ZoningCommission, supra, 35 Conn. App. 195. The trial court reviews the commission's action "only to determine whether it was unreasonable, arbitrary or illegal." Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). The plaintiff bears the burden of demonstrating that the commission acted improperly. Adolphson v. Zoning Board of Appeals,205 Conn. 703, 707, 535 A.2d 799 (1988).
Where the zoning authority has stated the reasons for its decision, the court is not at liberty to probe beyond them.DeMaria v. Planning and Zoning Commission, 159 Conn. 534, 541,271 A.2d 105 (1970). "It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." Id. The commission's action should be sustained if even one of the stated reasons is sufficient to support it. Property Group, Inc. v. Planning and ZoningCommission, 226 Conn. 684, 697, 628 A.2d 1277 (1993). The evidence supporting any such reason, however, must be substantial. Id. The question is whether the record before the commission supports its decision, and not whether the trial court would have reached the same conclusion. Id.
The commission determined that the subdivision application failed to comply with a number of Norwalk's subdivision regulations. Accordingly, the commission denied the application, listing eight reasons in support of its denial. (ROR, Items 45; 46).
CCS appeals on the grounds that the commission acted CT Page 10371 illegally, arbitrarily, and in abuse of its discretion in failing to approve a subdivision application which conformed to the subdivision and zoning regulations, failing to assign a proper reason for denying the application, and deciding the application based upon factors not contained in the regulations and as a result of public pressure from neighborhood opponents. In addition, CCS appeals on the basis that the commission improperly found that the application did not comply with various subdivision regulations, and that the commission improperly failed to modify and approve the subdivision.
This court addresses below, three of the commission's stated reasons, and the grounds for appeal alleged and briefed by CCS.
1. Whether the Record Supports the Commission's Finding that theApplication Did Not Comply with Section 3.20 of the SubdivisionRegulations.
The commission determined that the subdivision application did not comply with § 3.20 of the subdivision regulations, which provides that "[e]xcept where near future connections may be possible, dead-end or cul-de-sac streets shall not exceed 600' in length. . . ." (ROR, Items 54, 45; 46). In addition, the commission found that CCS did not demonstrate the criteria required for a waiver as required by § 3.32-5[1] of the regulations and General Statutes § 8-26,[2], nor did the applicant adequately demonstrate that future connections were possible. (ROR, Items 45; 46).
CCS appeals on the ground that the commission "improperly found that some dead end streets exceeded the 600 foot limitation in section 3.20 of the subdivision regulations because one subdivision road connects with both Flax Hill Road and Hadik Parkway, and another subdivision road connects with Flax Hill Road and Aviation Court, subject to a breakway barrier required by the Commission itself. . . ." (Appeal ¶ 14(d)). CCS further alleges that "the proposed subdivision roads are less than 600 feet in length from any through streets; and . . . that each of the four proposed subdivision roads is less than 600 feet in length, which complies with section 3.20." (Appeal ¶ 14 (d)).[3]
CCS contends that the subdivision map "shows that Roton Hill Lane connects with Hadik Parkway[,] with access blocked by an emergency access barrier, and that Fodor Farm Lane connects with CT Page 10372 Aviation Court where there is another emergency access barrier." (CCS' Brief, pp. 13-14). It maintains that "[t]he map also states that Aviation Court shall be widened to a minimum of 16 feet and extended to the property line." (CCS' Brief, p. 14). CCS argues that the 600 foot limitation is inapplicable because the subdivision roads are actually through streets. In addition, CCS maintains that it previously had represented to the commission that it would connect up the subdivision roads with Aviation Court and Hadik Parkway if requested.
The commission responds that the application did not comply with § 3.20 of the subdivision regulations because a review of the subdivision map reveals that "the street(s) in the subdivision, despite their various names, are visible as clearly being one street, one connected street with one way in and one way out, which exceeds 660 feet in length, clearly contrary to the regulation." (Commission's Brief, p. 3-4).
The record reveals the following. On February 6, 1996, Raymond Redniss of the firm of Redniss Mead Inc. wrote to Michael Greene, director of Norwalk's planning and zoning commission. (ROR, Item 3). Redniss Mead is a firm of engineers, planners, surveyors and environmental consultants. The letter described the property, stating, "[t]he land also abuts the dead-ended Hadik Parkway and Aviation Court, access to each of which is also undesirable." (ROR, Item 3, p. 1). The record reflects that the subject application was scheduled for preliminary review by the subdivision committee of the Norwalk planning commission on April 9, 1996. (ROR, Item 8). The planning engineer, Roger McFadden, wrote to CCS, enumerating the items to be addressed, which included "[t]he proposed plan does not comply with Section 3.20 of the Subdivision Regulations of the City of Norwalk, CT. Have alternatives been considered?" (ROR, Item 8, p. 1). Susan M. Kisken, PE, from Redniss Mead Inc., responded by letter. (ROR, Item 9). Kisken commented that they had "requested a waiver of Section 3.20 with respect to the maximum length of dead end streets. . . ." (ROR, Item 9, p. 1). Kisken's letter observed that connecting to Hadik Parkway or Aviation Court was undesirable. She explained that "Aviation Court is only 20 feet wide (ROW) with existing development reasonably close to the travelled way. Hadik Parkway is an established neighborhood which enjoys the same cul-de-sac environment sought for the subject parcel." (ROR, Item 9, p. 1). The letter further noted that "[e]mergency accessways have been provided at the end of each proposed cul-de-sac." (ROR, Item 9, p. 1). CT Page 10373
The minutes from the April 9, 1996 subdivision committee meeting indicate that McFadden reviewed the subdivision application and a discussion ensued concerning the emergency exits. (ROR, Item 11, p. 1). Redniss commented "that they wanted to make the area into its own `neighborhood' by eliminating a thru access." (ROR, Item 11, p. 2). A letter from Kisken to the fire marshal, James Verda, dated April 18, 1996, reveals that several revisions were made to the preliminary subdivision map in response to the fire marshal's request. (ROR, Item 15). For example, (1) emergency access was added to Hadik Parkway, and the access would be 16 feet wide and constructed with grass pavers and a break away chain; (2) the emergency access to Aviation Court was increased to 16 feet; (3) emergency access to Flax Hill Road was eliminated; and (4) the development would maintain the emergency accessways. (ROR, Item 15).
A memorandum from Dennis J. Santella, chairman of the subdivision committee, to Stephen A. Thomas, chairman of the planning commission, dated May 8, 1996, reported, in part, that "[t]he application as submitted does not comply with Section 3.20 of the Subdivision Regulations which requires that cul-de-sac streets not exceed a length of 600 [feet]." (ROR, Item 26). The memorandum listed several other areas of noncompliance, and noted that "[t]he applicants have requested waivers of these requirements." (ROR, Item 26).
A public hearing was conducted on May 8, 1996. (ROR, Item 29). At the hearing, Paul Siladi, a partner of CCS, commented that "[o]ther access and egress alternatives were studied but it was determined not to tie our road into Hadik Parkway or Aviation Court, except for emergency access. As part of the plan of process we met with the Fire Marshal and other department personnel to formulate a plan to provide safety of our project and the surrounding neighborhood. This plan before you was approved by his department." (ROR, Item 29, p. 3). Kenneth Hapke, retained to represent the Brookside Neighborhood Association, objected concerning "a disregard for Section 3.20 of the subdivision regulations which requires that the length of cul-de-sacs within subdivisions be limited to 600 feet unless in the near future some connection be on the site is possible and there has been no — the language is clear here — there is no deviation on that." (ROR, Item 29, p. 6). John J. Ryan, an attorney representing CCS, responded by stating: "I will just make the obvious point that if we did not apply for this waiver CT Page 10374 you know under the regulations, we could build more lots which I guaranty [sic] would make the neighbors more unhappy and that would mean that the only way of setting up these [sic] street traffic flow is by connecting with the existing streets which was something that was discussed at the previous Committee meeting. I don't think that that is something that you the Commission wants done, I don't think that's something the DPW wants done so that was why this was designed the way that it was. If the waiver wasn't asked for then what would happen is that the traffic would be short cutting through this or anything else that would be built there in the future and it would be more of a problem." (ROR, Item 29, p. 26). Ryan continued, "[s]o the reason for the waiver, contrary to belief, is not any benefit to the applicant to get more lots. The waiver is less lots to create an on-site internal traffic flow." (ROR, Item 29, p. 26). Ryan further stated that "[a]gain we are not asking for any variances and with that I apologize for going back to point number one that there is no hardship required for the traffic cul-de-sac waiver because people mix that up with the burden of proof required for a variance from ZBA." (ROR, Item 29, p. 26).
During this hearing, Raymond Redniss addressed the cul-de-sac and waiver issue. (ROR, Item 29, p. 27). Redniss noted "[t]he cul-de-sac situation and the lack of cul-de-sacs as they approach the limits of the property. Section 3. starts out by stating `except where no future connections may be possible.' We're not interested in doing that and conversing with this subcommittee and with DPW it seemed like no one was interested in doing that, however, I submit that it is possible and if in fact it is possible, that we comply with the language of that regulation." (ROR, Item 29, p. 27). He alluded to "several plans" that had been submitted to the subcommittee, and stated that they could "bring those right to the property line as prescribed. We did not do that. We brought them away from the property to assure and make the firm statement that we did not want to go though with the other streets." (ROR, Item 29, p. 27). Later, Ryan observed that "we have not asked for anything discretionary that would require you to bend, alter, change, tinker with or whatever . . . your subdivision regulations. We've covered everything on the list. The only one that could potentially be a problem is the waiver which is not a ZBA waiver, it is the waiver about the internal 600 foot length cul-de-sac requirement. We explained, and you know, why we have done that and we don't believe that under the ways the regulations are written that we have to ask for a waiver but the reason for the lay-up is to prevent getting CT Page 10375 into the situation of connecting through with the other streets." (ROR, Item 29, p. 32). At the close of the hearing, it was determined to refer the application back to the subcommittee. (ROR, Item 29, p. 33).[4]
Following the hearing, the commission received a copy of a letter from Redniss to Ryan, dated June 7, 1996, in which Redniss wrote "[a] key factor in the development of the final submitted Preliminary Subdivision Map was the issue of the layout of the internal streets. In keeping with initial design goals and sentiment expressed by neighbors and departmental staff, we very purposefully did not propose to have the internal road system tie in to the abutting Aviation Court or Hadik Parkway. As I addressed in my testimony at the hearing, the design of the road system conforms to the regulations and it is my opinion that there is no need for a waiver. The pertinent regulation, Section 3.20 . . . defines the limitation of length of such a street to 600 feet. The reasoning for that limitation is founded in the logic that it is difficult for emergency vehicles to backup great distances and that there needs to be points at which such vehicles can be maneuvered past each. The design layout of the streets proposed for this subdivision enable appropriate maneuvering and have met with the approval of the Fire Marshall. The creation of intersections (Section 3.21 INTERSECTIONS), rather than the continuation of a singular roadway, conforms with the language of the regulation. The design lengths of each of the internal roads are: Roton Hill Lane — 260'; Roton Hill Lane East — 280'; Fodor Farm Lane — 440'; and, Fodor Farm Court — 480'. Also, 3.20 is clear with respect to the possibility of future connection of a cul-de-sac or dead-end street eliminating the limitation of length. Certainly, we meet the test on that score as well." (ROR, Item 34). Redniss continued, "[a]t the hearing, I stated that I was of the opinion we met both the technical requirement and spirit of the regulation, but that should the Commission decide it necessary to secure a waiver of the standard (Section 3.32-5) then surely adherence to impacts . . . warrant the granting of same." (ROR, Item 34).
The record contains another memorandum from the chairman of the subdivision committee, Santella, to the planning commission chairman, Thomas, dated June 11, 1996, in which Santella again reported that "[t]he application as submitted does not comply with Section 3.20 of the Subdivision Regulations which requires that cul-de-sac streets not exceed a length of 600'. . . ." (ROR, Item 37). Santella enumerated several additional areas of CT Page 10376 noncompliance, and noted that "[t]he applicants have requested waivers of these requirements." (ROR, Item 37).
The minutes from a June 11, 1996 subdivision committee meeting indicate that McFadden, the planning engineer, presented the plans for the CCS project. It was noted that tree removal was required for an emergency exit, and that a waiver was requested for hardship reasons for the 600 feet cul-de-sac requirement, but that this issue had not been addressed at the public hearing. (ROR, Item 39, p. 1). Michael B. Greene, the director of the planning and zoning commission, stated that the developer had no hardship concerning this requirement and Santella commented that he had a problem waiving this requirement. The committee unanimously passed a motion recommending denial of the waiver due to lack of a hardship. (ROR, Item 39, p. 2).
In a June 30, 1996 letter from Ryan to Greene, Ryan noted that Redniss delivered three alternative plans, containing various modifications to the existing application, to Greene's office. (ROR, Item 40). He summarized one of the plans as removing the planned gate at the south end of Fodor Farm Lane and tying into Aviation Court. He observed that "[e]ach of the above modifications eliminates the need for a waiver as no street would exceed 600 feet from the through street." (ROR, Item 40, p. 2).
In a third memorandum from Santella of the subdivision committee to Thomas of the planning commission, dated July 9, 1996, Santella noted that the submitted application did not comply with several sections of the subdivision regulations, including section 3.20, and that waivers had been requested. (ROR, Item 41). The subdivision committee proceeded to recommend a "resolution" to deny the application on eight grounds. (ROR, Item 41, Attachment).
At a July 9, 1996 subdivision committee meeting, a review recommendation of the CCS subdivision application was on the agenda. (ROR, Item 43). The assistant director of planning and zoning, Michael Wrinn, "reviewed the site plans and said that the main issue had been that the subdivision regulations state that the roadway could not be longer than 600 feet." (ROR, Item 43). "Alternate routes were discussed and it was noted that Aviary [sic] Court does not meet the required road width to be able to utilize that street." (ROR, Item 43). During the meeting, Santella "reminded the committee that they were not there to redesign the plans." (ROR, Item 43). At this meeting "[i]t was CT Page 10377 noted that the applicant could withdraw their [sic] plans and resubmit them if they were substantially different than those already submitted." (ROR, Item 43). A motion to recommend denial of the application passed unanimously; (ROR, Item 43); and a resolution to deny the application was unanimously passed at the July 9, 1996 planning commission meeting and public hearing. (ROR, Item 45, p. 5).
The court finds that the commission correctly interpreted § 3.20 of the subdivision regulations and applied it with reasonable discretion to the facts.
Section 3.20 provides, in relevant part, that "[e]xcept where near future connections may be possible, dead-end or cul-de-sac streets shall not exceed 600' in length. . . ." (ROR, Item 54).
The commission is endowed with a liberal discretion "in interpreting its own regulations. . . ." (Citation omitted.)Double I Limited Partnership v. Plan Zoning Commission,218 Conn. 65, 75, 588 A.2d 624 (1991). It is the commission's function "to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.) Spero v. Zoning Board of Appeals, 217 Conn. 435, 440,586 A.2d 590 (1991). The trial court must then decide whether the commission correctly interpreted the regulation at issue and applied it with reasonable discretion to the facts. Id.
General Statutes § 8-26 "merely provides for the commission to approve, modify and approve, or disapprove a subdivision application." (Internal quotation marks omitted.)Carpenter v. Planning Zoning Commission, 176 Conn. 581, 592,409 A.2d 1029 (1979). "A commission may, at its discretion, choose between disapproval or approval with conditions." Krawskiv. Planning Zoning Commission, 21 Conn. App. 667, 673,575 A.2d 1036, cert. denied, 215 Conn. 814, 576 A.2d 543 (1990). "[I]t can approve the application exactly as it was submitted; it can make changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified; or it can disapprove the application outright." Carlsonv. Fisher, 18 Conn. App. 488, 496, 558 A.2d 1029 (1989). CT Page 10378
A review of the subdivision map demonstrates that the commission reasonably could have concluded that the four subdivision "streets", Fodor Farm Court, Fodor Farm Lane, Roton Hill East, and Roton Hill Lane, actually constitute a single, connected street in excess of 600 feet in length, with Roton Hill Lane providing the only connection into, and out of, the subdivision. (ROR, Item 55). Further, the record supports the commission's determination that the application submitted by CCS did not adequately demonstrate that near future connections were possible.
Redniss Mead's general description of the property stated that the subject parcel "abuts the dead-ended Hadik Parkway and Aviation Court, access to each of which is also undesirable." (ROR, Item 3, p. 1). Redniss Mead further underscored the undesirability of connecting to Hadik Parkway or Aviation Court by observing that Aviation Court was only "20 feet wide (ROW) with existing development reasonably close to the travelled way[,]" and that Hadik Parkway was "an established neighborhood," which currently enjoyed "the same cul-de-sac environment sought for the subject parcel." (ROR, Item 9, p. 1). The record further reflects that Redniss Mead "purposefully" decided not to propose an internal road system tie-in because of its design goals, and due to input from departmental staff and from the neighbors. (ROR, Item 34). During the subdivision committee review, it was noted that Aviation Court did not meet the required road width, and the committee was reminded that they were not there to redesign the plans. (ROR, Item 43). Despite the later submission of "alternate plans" suggesting some "possibility" of connecting the subdivision roads to Hadik Parkway and Aviation Court, the commission only was required to review the original application to determine whether it complied with the subdivision regulations. It was within the discretion of the commission to then "choose between disapproval or approval with conditions." Krawski v. Planning Zoning Commission, supra,21 Conn. App. 673. The record reasonably supports the commission's decision to disapprove the subdivision application because of noncompliance with § 3.20.
2. Whether the Record Supports the Commission's Finding thatthe Application Did Not Comply with Section 3.18 of theSubdivision Regulations Concerning Minimum Lot Depth.
The commission further found that the application did not comport with § 3.18 of the subdivision regulations, and that CT Page 10379 CCS had not otherwise met the requirements for a waiver. (ROR, Items 45; 46). This regulation provides, in part, that "[w]here streets do not extend to the boundaries of the tract, they shall be separate from such boundaries by a distance not less than [the] minimum lot depth prescribed for the Zoning District in which the proposed subdivision is located." (ROR, Item 54). The regulation also provides that "[i]f a further extension of the proposed street is anticipated and if said extension is, in the opinion of the Commission, compatible with the Comprehensive Plan, the above regulations may be waived." (ROR, Item 54).
CCS argues that this regulation is inapplicable and that no waiver of this section was required, or requested, by CCS. Further, CCS contends that the subdivision map shows the extension of Fodor Farm Lane and Roton Hill Lane to the subdivision boundary because these were through streets, separated only by emergency barriers to accommodate the city of Norwalk.
The commission responds that the zoning regulations require a minimum lot width of 70 feet of the length of the lot, and "[t]his would require a distance of 70 feet from the boundary of the Sabia, Aviation Court, [and] Townhouse Pine properties." (Commission's Brief, p. 5). The commission contends that, as reflected on the subdivision map, the distance is less than 70 feet, "therefore the application is contrary to the requirement of the regulation." (Commission's Brief, p. 6).
A June 11, 1996 memorandum from Santella, subdivision committee chairman, to Thomas, the planning commission chairman, provided, in part, that the application failed to comply with § 3.18, "which requires that streets extend to the boundaries of the tract or that they be separated from such boundary by a distance not less than the minimum lot depth prescribed for the Zoning district." (ROR, Item 37). Another memorandum from Santella to Thomas reiterated that the application did not comply with § 3.18 for the same reason, indicating that 70 feet was the minimum lot depth "prescribed for the Zoning district." (ROR, Item 41). The subcommittee recommended that the application be denied, in pertinent part, on that basis; (ROR, Item 41, Attachment); and, on July 9, 1996, the commission unanimously voted to deny the application. (ROR, Item 45, p. 5).
As stated above, the subdivision committee previously had ascertained that the minimum lot depth was 70 feet. (ROR, Item CT Page 10380 41). The subdivision map reveals that the proposed subdivision streets do not extend to the boundaries of the tract, and that the distance between the streets, Fodor Farm Lane and Roton Hill Lane, and the boundaries of the tract is less than 70 feet. (ROR, Item 55). As discussed, supra, the subdivision map reflects that neither Fodor Farm Lane nor Roton Hill Lane are through streets, but, rather, that they only "connect" with Aviation Court and Hadik Parkway, respectively, via proposed emergency accessways.
3. Whether the Record Supports the Commission's Finding thatthe Application Did Not Comply with Section 3.18 of theSubdivision Regulations Concerning Street ArrangementConsiderations.
The commission further determined that CCS had not shown that the proposed subdivision could be added safely to the existing street network as required by § 3.18. (ROR, Items 45; 46). This regulation provides that the street arrangement must give consideration "to existing and planned streets, topographical conditions, public convenience, safety, and the proposed uses of the land to be served by such streets." (ROR, Item 54).
CCS argues that the record does not support this reason because the traffic added as a result of the subdivision is minimal, the intersection at Roton Hill Avenue and Flax Hill Road provides an "excellent sight line[,]" and "[n]o problem has been identified as to the grade of the subdivision roads, intersections or sight distances. . . ." (CCS' Brief, p. 23).
Hapke, representing the neighborhood association, referred to this provision at the May 8, 1996 public hearing. Hapke stated "Section 3.18 of your subdivision regulations indicates that the plan and the arrangement of streets in the subdivision should show consideration for the existing street layout in the neighborhood in order to insure safety. I have found no explanation why [a] new curb cut to serve this property south of the Scribner intersection is the safest alternative." (ROR, Item 29, p. 8). Ryan responded by noting that "the comment was made why was the traffic configuration and the curb cut put the way that it was. Because going through, as you know we have a long checklist of departments — DPW, the Fire Marshal in terms of where the fire engines could get in and out, in terms of all the different configurations which obviously we haven't brought here. [Preliminarily] it was determined that of the various agencies that this was the best way for their input and to lay it CT Page 10381 out the way that it was." (ROR, Item 29, p. 32).
The court finds that the record supports the commission's finding that the proposed development did not comply with § 3.20 (cul-de-sac streets shall not exceed 600 feet in length), discussed, supra, and the record supports a finding that the street arrangement of the proposed subdivision fails to comply with § 3.18.
The commission's action should be sustained if even one of the stated reasons is sufficient to support it. Property Group,Inc. v. Planning and Zoning Commission, supra, 226 Conn. 697.
This court dismisses the appeal of CCS on the grounds that the record supports the commission's decision that the subdivision application did not comply with subdivision regulation § 3.20, which provides for the maximum length of dead-end or cul-de-sac streets; the provision in § 3.18 which governs streets with respect to tract boundaries; and the provision in § 3.18 concerning street arrangement considerations.
KARAZIN, J.