[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Planning and Zoning Commission of the Town of Westport denying the plaintiff's application to amend an existing special permit which allowed him to operate a private boat club in a residential area.
The plaintiff has established that he is the owner of the property which was benefited by the special permit, having acquired the property by warranty deed from Newton and Dorothy
Hunt in December, 1987. He has established that he is aggrieved by the commission's denial of his application.
The original permit #81-21 expired in 1983. It was renewed in 1985 by the then owners of the property, the Hunts, under file #85-144. The commission referred to these permits as generically as #81-21.
The permit #85-144 allowed the Tidewater Boat club, then owned by the Hunts, to operate a boat club on the premises subject to fourteen (14) conditions. The conditions which the plaintiff sought to modify by his application to amend appear as #8 which says "that no boat or engine maintenance shall occur on the site." and #4B which refers to a landscape and planting plan.
The application primarily sought to amend the special permit to allow engine maintenance and repair. The application also sought to change the tree planting condition to allow the displacement of several required trees in order to facilitate the operation of a crane and access to several boat storage slots.
The commission in its decision voted to deny the application, to wit:
 "BE IT RESOLVED THAT Appli. #90-36 by Lou Guimond for special permit modification to permit boat and engine maintenance repair at 471 Riverside Avenue in a Res. A Dist., Map 5303, Lot 192 be DENIED for the following reasons:
 1. Conditions in the original special permit 81-21 outlined the intent of the prior Planning and Zoning Commission to maintain the residential character of the neighborhood, an intent in which the present Planning and Zoning Commission is in full agreement and therefore elects not to modify the special permit." CT Page 6153
It appears from the record that no one before the present plaintiff attempted to operate the permitted boat club. The plaintiff, in his brief, contends that it was his position before the commission that the enterprise of running a boat club would not be economically viable for boat storage facility, as the special exception permit had intended, unless one could do those things which are concomitant with boat storage, namely the draining of engine fluid at storage time; winterizing the boat; as well as scraping, waxing and painting the bottoms of the boats when they are hauled for storage.
The plaintiff further contends that although the application information purports to amend the special permit to allow engine maintenance and repair, what was actually contemplated was set forth by his expert, Senior Environmental Analyst Judith A. Slayback, of Environmental Design Associates PC in her written report to the Commission (Return of Record, (Exhibit 7). The work was to include: 1) pressure washing — no detergents to be used; 2)painting, waxing and repair work; 3) winterizing. These items were characterized in the CAM and site plan application attached to exhibit 7 as "limited maintenance and repair work on boats." Therefore, the plaintiff argues the application did not concern itself with doing major engine maintenance and/or repair but only limited maintenance provided to boat club members only.
The other issue before the commission was the landscaping requirement for the planting of eight foot pine trees referred to in the permit. The plaintiff notes that his expert, Judith Slayback, testified that the trees requirement as set out by the commission did not make sense since it would interfere with the operation of a crane on the premises.
The reports to the commission from the other agencies which reviewed the application were favorable.
Although the plaintiff claims there was no opposition at the hearing, the minutes reveal at least one property owner indicated displeasure. One of the neighbors did testify he had no objection to the limited work on boats at the site. There was also a letter in support supplied by another owner.
The plaintiff further claims the discussion before the board indicated that the area, while zoned residential, supports many commercial type uses. (Return of Record, Transcript, Exhibit 24a, pp. 15-16). The commission itself recognized that the club in question owned by the plaintiff is not a commercial operation. (Return of Record, Transcript, Exhibit 24a, p. 34). Not one speaker mentioned the residential character of the CT Page 6154 neighborhood, nor is it mentioned in any permits.
The transcript, while almost unintelligible, seems to support these claims.
The plaintiff's principal contention is that the modification to the permit he requested should have been granted as a matter of right since in effect he was asking only for a language change to state an accessory use to the already permitted use on the site. The plaintiff argues that the permits already allowed the storage of not more than thirty-two boats during the winter and off season. The permits do not define by their terms in the conditions attached to them the meaning of engine maintenance and repair.
The plaintiff contends that the application before the board really limited itself to those housekeeping items attached to the storage functions already permitted by the board, not for full boat maintenance and repair as defined in a dictionary. Therefore, the issue which the plaintiff attempted to clarify in his permit was and is an accessory use to the permitted principal use. An accessory use in Connecticut is one shaped by the primary use to which it is incidental. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 418 A.2d 82 (1979) An accessory use is dependent upon or pertains to the principal use. Lawrence v. Zoning Board of Appeals, 158 Conn. 509,264 A.2d 552 (1969);
The plaintiff points out that the permit under which he is operating was issued under the authority of Westport Zoning Regulations, Section 11-2.2.10, to wit:
11-2. Special Permit uses
The following uses are permitted subject to special permit and site plan approval in accordance with section 43, herein: 11-2.2.10 Private non-commercial boathouses, landings and docks. No boat shall be occupied or used as a dwelling or dwelling unit. The same regulations define accessory use as follows:
 "A use of land, buildings or structures which is incidental, subordinate and customarily used in connection with, and located on the same lot with, the principal building, structure and use."
Westport Zoning Regulations, Section 5-2. CT Page 6155
As a matter of fact, the plaintiff urges that in the special permits that had been granted, the previous commission restricted only boat engine maintenance and repair, not the scraping of hulls, waxing, and draining of fluids which the board in its discussion says, sub silentio, is part if the storage function and therefore are accessory uses permitted by the Westport Zoning Regulations. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 418 A.2d 82 (1979) Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 264 A.2d 552 (1969); Daughters of St. Paul v. Zoning Board of Appeals, 17 Conn. App. 53,549 A.2d 1076 (1988).
The plaintiff further argues that the board abused its discretion in not granting his application and moreover rendered a decision which was not supported by substantial evidence.
The decision indicated that the board was concerned with maintaining the residential character of the neighborhood. By doing this it abused its discretion because it had already granted a special permit for a private boat club to be established on the premises in 1981.
Once a special use permit is granted, the board is precluded from further inquiry into the use since it had already granted the use in the zone. The Westport Zoning Regulations, Section 44-6, Special Permit standards, requires that before the board issue the special permit to insure that the use is in with the zone. "Designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values or the harmony of the district". Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 443, 418 A.2d 82 (1979).
When a zoning board has stated the reasons for its action, the court should examine those reasons and determine whether they are supported in the record. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440, 418 A.2d 82 (1979); Goldberg v. Zoning Commission, 173 Conn. 23, 376 A.2d 385 (1977); DeMaria v. Planning and Zoning Commission, 159 Conn. 534, 271 A.2d 105
(1970).
The plaintiff argues that everything before the board supported the application and the record simply does not support the board's decision. Burnham v. Planning Zoning Commission,189 Conn. 261, 455 A.2d 339 (1983). No one expressed concern about the residential character of the neighborhood. There are numerous special permits allowed in the neighborhood. (Return of Record, Transcript, Exhibit 24a, pp. 15-16). The granted CT Page 6156 permits make no reference to the residential character of the area.
To uphold an administrative agency's decision, there must be substantial evidence in the record to support the board's conclusion. Huck v. Greenwich Inland Wetlands Agency, 203 Conn. 525,525 A.2d 940 (1987). Here, the plaintiff contends there was no evidence.
The only expert evidence was from Ms. Slayback. The plaintiff cites as a similar case is Feinson v. Conservation commission, 180 Conn. 412, 429 A.2d 90 (1980). That decision stands for the principle that a lay commission acts without substantial evidence when it relies on its own knowledge and experience concerning technically complex issues such as pollution control. See Tanner v. Conservation Commission of Norwalk, 15 Conn. App. 336, 544 A.2d 258 (1988).
The board disregarded the recommendation of the Conservation Commission which was favorable to this project. It also disregarded the only expert testimony which was available on the subject which clearly showed that winterizing of engines is an entirely manageable function. (Return of Record, Transcript, Exhibit 24a, pp. 1-5).
The other condition sought to be modified dealt with landscaping. The evidence before the board, again uncontradicted, was that the trees ordered to be planted would interfere with the operation of the crane. This is a safety issue as well as a zoning issue. Not to grant this relief when it is appropriate and not in contravention of the intention of the board to create screening is unreasonable and arbitrary. Judicial redress is warranted. Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 521 A.2d 590 (1987).
In response, the defendant Commission urges that the proposed modification did not constitute an accessory use.
Generally, a special exception allows an owner to put his property to a use which is expressly permitted under the zoning regulations. Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 353, 232 A.2d 916 (1967). The commission may impose conditions where the same are warranted by the regulation. Where questions involving the issuance of special permits are fairly debatable, deference must be accorded to the commission's decision. Lurie v. Planning Zoning Commission, 160 Conn. 295, 278 A.2d 799 (1971).
The defendant Commission argues that the plaintiff sought not an accessory use, but a modification to allow performance of CT Page 6157 work expressly prohibited by prior permits.
Concededly, as the plaintiff indicates, an accessory use is defined in the regulations as "a use of land, buildings or structures which is incidental, subordinate and customarily used in connection with and located on the same lot with, the principal building, structure or use." Westport Zoning Regulations, Sec. 5-2 (July, 1989). But, the accessory use, to be incidental, must be "not the primary use of the property but rather one which is subordinate or minor in significance." Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 512,264 A.2d 552 (1969). "Customarily" refers to whether or not it is usual to maintain the use in question in connection with the primary use of land. Lawrence v. Zoning Board of Appeals,158 Conn. 509, 264 A.2d 552 (1969).
The Commission urges that the plaintiff's use request, however, expanded upon the use of the property by allowing more extensive activities to take place. Boat owners and others would be allowed to do that which was not, at that site, commonly and habitually associated with storage. They would instead be allowed to maintain and repair boats.
In addition, evidence showed that a sump would be lined with engineering fabric to collect debris. Oil would be pumped into containers. These activities, among others, were new and in addition to prior acts performed by boat owners.
The defendant points out that the Commission also expressed concern that the use of the club would become wholly commercial — as is prohibited — when the additional repair items were conducted.
The defendant then contends that the plaintiff's proposed use of the property would contravene section 8-2 of the Connecticut General Statutes. The proposed use must satisfy the standards set forth in the regulations as well as the conditions necessary to protect the public health, safety, convenience and property values. A. P. W. Holding Corp. v. Planning Zoning Bd., 167 Conn. 182, 185, 355 A.2d 91 (1974) (citing Anastasia v. Zoning Comm'n, 163 Conn. 187, 190). The proposed use by the plaintiff does not engender these criteria because the use expands the commercial development within a residential zone. The proposed use does not further these criteria because it is a commercial use within a residential zone.
Moreover, the defendant argues that the Commission never considered whether the use presented was accessory, and therefore such question is not properly considered here. CT Page 6158
The court, in reviewing an agency's decision, does not conduct a de novo trial to substitute its findings for those of the local zoning authority. Verney v. Planning Zoning Board of Appeals, 151 Conn. 578, 580, 200 A.2d 714 (1964). The court's review ia rather limited to determining, on the record before the authority, whether the authority acted upon valid motives and for valid reasons. Gulf Oil Corp. v. Bd. of Selectmen, 144 Conn. 61, 65, 127 A.2d 48 (1964). Consistently, this court cannot consider whether the use of the property would be accessory because such question was not presented to the commission. Plaintiff sought a modification of his special permit. The commission heard a request for modification. This is not a situation where the plaintiff conducted extra activities, believing that they were accessory, and was thereafter issued a cease and desist order. Compare Lawrence v. Zoning Board of Appeals, 158 Conn. 509, 264 A.2d 552 (1969). He applied for modification, by his own admission, so that his operation could be economically viable. The court should not consider the suggestion that the use was accessory, as such a position was, if at all, only tangentially presented to the zoning commission. (The plaintiff, at this court's hearing explained that the matter was brought before the commission as a request for modification rather than as a claim for approval of an accessory use because a cease and desist order was issued in November 1989. When he received the order, the plaintiff, acting without an attorney, was advised by the Westport Zoning authority to file an application for modification of the special permit. That is why the plaintiff is in court arguing accessory use rather than before the Zoning Board of Appeals.)
Ultimately, the defendant argues that the board did not abuse its discretion in not granting plaintiff's application. Unquestionably, plaintiff bears the burden of proof to establish that the zoning authority acted improperly. Williard v. Zoning Board of Appeals, 152 Conn. 247, 206 A.2d 110 (1964); Hamelin v. Zoning Board, 19 Conn. Sup. 445, 117 A.2d 86 (1955). Only a limited number of actions by the zoning authority are viewed as arbitrary, such as prejudice by a hearing officer. Furtney v. Simsbury Zoning Commission, 159 Conn. 585, 271 A.2d 319 (1970). The commission's determination of questions involving the public interest are ordinarily accorded great deference. Ferndale Dairy v. Zoning Commission, 148 Conn. 172, 169 A.2d 268 (1961). Where considerations are fairly debatable, the commission's decision must be upheld. Summ v. Zoning Commission, 150 Conn. 79,186 A.2d 160 (1962).
Plaintiff claims that modification denial was arbitrary because a prior approval for a boat club operation had been granted. But that approval involved many conditions, including that "no boat or engine maintenance occur on site." The CT Page 6159 plaintiff just ignores that condition and cites no case that such condition is arbitrary.
 III.
In addressing the claim that the plaintiff was seeking to expand his permitted use, the plaintiff urges that while the issue of expansion of use has not been extensively discussed in court decisions, by analogy, it has been discussed with regard to the issue of non-conforming use. There, expansion is not permitted; however, intensification is permitted. Seaside Properties v. Zoning Board of appeals of Fairfield, 14 Conn. App. 638,542 A.2d 746 (1988); Planning and Zoning commission of the Town of Lebanon v. Kraft, 12 Conn. App. 90, 529 A.2d 1328 (1987). This, the plaintiff claims, is not an expansion: an expansion would be if he were asking to do full engine maintenance and repair or for permission to store more than 32 boats. he has done neither.
Also, if the Commission had any expertise on the issue on the issue of the expanded commercial use of the area, it should have been disclosed at the hearing. Feinson v. Conservation Commission, 180 Conn. 412, 429 A.2d 90 (1980). Only by disclosing its expertise would the plaintiff have had an opportunity to effectively confront this issue. This becomes an issue of fundamental fairness and if it was not present, certainly the action of the commission could either be considered arbitrary and illegal, Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 236 A.2d 96 (1967), or in the alternative, not supported by substantial evidence. Huck v. Greenwich Inland Wetlands Agency, 203 Conn. 525, 525 A.2d 940
(1987).
While the defendant argues that the commission would have been acting contrary to C.G.S. 8-2 if it granted the plaintiff's request, the fact is that the special permit had already been granted and the commission was excluded from inquiring into the issue. Beit Havurah v. Zoning Board of Appeals, 177 Conn. 440,443, 418 A.2d 82 (1979). To say now that the regulations do not encourage commercial development after a special permit has been issued is a contradiction in words and terms. The regulations permit the plaintiff's use in the zone where it is located. Westport Zone Regulations, 11-2.2.10.
As to the argument that the plaintiff is seeking a de novo trial because the issue of accessory use was never presented to the commission, under these facts the plaintiff made an application to the commission based on the advice of the commission. The commission cannot say that it is not familiar with its own regulations. It should have recognized that the CT Page 6160 case presented an issue of accessory use. By not doing so, it acted illegally. A. P. W. Holding Corp. v. Planning Zoning Bd., 167 Conn. 182, 185, 355 A.2d 91 (1974). In land use cases, it is the commission which determines the applicability of the law to the facts. It is the function of the court to determine whether the law is correctly applied. Thorne v. Zoning Board of Appeals, 156 Conn. 619, 238 A.2d 400 (1968). In reviewing the decision of the commission, the court is not bound by the legal interpretation of the board. Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, A.2d (1990). The court then, after interpreting the ordinance, decides whether the Board applied the law with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals, 150 Conn. 113, 186 A.2d 377 (1962).
Here, the board misinterpreted its own ordinances by disallowing an accessory use. This is not a case where the commission could have gone either way. The use which the plaintiff sought was accessory and he was put into this forum by the commission itself.
 IV.
The Commission responds that the use of the premises represents an expansion and not an intensification of the existing use of the property. The plaintiff argues that the modification to permit washing, waxing, painting and engine repair constituted an intensification and not an expansion of the existing use. Pointing out that this concept is most often applied to non-conforming uses and not special exemptions, the defendant replies that the courts have generally sought to protect non-conforming uses because the right to continue a use which predated zoning regulations is a vested right which adheres to the land itself. Petruzzi v. Zoning Board of Appeals, 176 Conn. 479, 483, 408 A.2d 243 (1979). Nevertheless the courts recognize that non-conformities should be abolished or reduced to conformity as soon as possible. Weyls v. Zoning Board of Appeals, 161 Conn. 516, 290 A.2d 350 (1976). The theory of a special exemption "expanded use" may initially be unworkable because a greater degree of interpretation and defense is accorded to an authority when it enacts or amends a regulation. Morningside Association v. Planning Zoning Board,162 Conn. 154, 292 A.2d 893 (1972). Concomitantly, the degree of discretion of the commission to refuse to expand uses under special exemptions must be great.
Additionally, plaintiff in his letter to the commission clearly establishes his intent to do boat and engine maintenance. Plaintiff's application also manifest that intent. Plaintiff notes in a letter to the board that boat and engine maintenance and repair includes as examples washing, waxing and CT Page 6161 painting. Plaintiff includes examples but not limitations to the proposed activity.
Plaintiff's brief suggests that the proposed use is not an expansion since an expansion would be "full engine maintenance and repair." In Connecticut, however, a change in character of use constitutes an unlawful extension. Helicopter Associates, Inc. v. Stamford, 201 Conn. 700, 716, 519 A.2d 49 (1986). Here, the character of the use would change from storage to repair, in contravention of the explicit terms of the prior special exemption. Macaluso v. Zoning Board, 167 Conn. 596,356 A.2d 885 (1975); Connecticut Sand Stone Co. v. Zoning Board of Appeals, 150 Conn. 439, 443, 190 A.2d 594 (1963).
The defendant reiterates that the commission's decision must be accorded deference.
While plaintiff suggests that the Commission members relied on their own technical expertise in failing to issue a permit in accordance with the testimony of Ms. Slayback. Feinson v. Conservation Commission, 180 Conn. 412, 429 A.2d 90 (1980). The defendant's decision, the Commission claims, was made because plaintiff's further commercial development would be out of step with the residential character of the neighborhood. This decision is in keeping with the principle that commission members are entitled to opinions about the development of the communities. Furtney v. Simsbury Zoning Commission, 159 Conn. 585,271 A.2d 319 (1970). The commission members did not interpose their own technical opinions, but rather their views on the nature of the area. Furtney v. Simsbury Zoning Commission, 159 Conn. 585, 271 A.2d 319 (1970).
Finally, the defendant urges that the commission is not charged with a duty to raise the possibility that the plaintiff's use was accessory.
While the commission is charged with knowledge of its own regulations, A. P. W. Holding Corp. v. Planning Zoning Bd.,167 Conn. 182, 355 A.2d 91 (1974), to ask the commission to adopt inventive interpretations of its own regulations and provide those interpretations to the plaintiff, such as raising sua sponte the notion that the requested use was accessory, would usurp the role of a neutral administrative body. Especially in light of the specific prohibition in the permits, the commission could readily have determined that the modification would allow commercial use in a residential zone.
The court in reviewing the decision will reverse it only if the action of the board is unreasonable, arbitrary or illegal. Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 236 A.2d 96
CT Page 6162 (1967); Gagnon, Municipal Planning Commission, 10 Conn. App. 54,521 A.2d 590 (1987); Torsiello v. Zoning Board of Appeals,3 Conn. App. 47, 484 A.2d 483 (1984); Schwartz v. Planning Zoning Commission, 208 Conn. 146, 543 A.2d 1339 (1988).
This court has set forth the argument of the parties in detail because it agrees with the plaintiff that the activity listed by Ms. Slayback in her report to the Commission might well be considered as accessory to the use permitted by the special exception and well within the terms of the Westport zoning regulations. Such activity for the purpose of hauling, winterizing and storing boats and relaunching at the beginning of the boating season might well be considered a necessary correlative under the special permit if limited to the storage function for members of the boat club. There is some indication in the transcript that this might have been the applicant's intention. Moreover, the court understands that the applicant may have been before the commission seeking a modification of the specific restriction concerning repair and maintenance because of the advice of the zoning authorities.
That having been said, the court must agree with the defendant that the submission by the applicant and the application itself indicated that the request was for permission to do boat and engine maintenance by the plaintiff at the site. There was no indication that the intention was to limit the function to the examples set out by plaintiffs expert to work necessarily ancillary to boat club storage functions. Rather the application seemed to indicate a general boat repair and maintenance function.
Under these circumstances, the court cannot say the commission was unreasonable in denying such an application on the basis that it would be establishing an added commercial function in a residential zone. The court cannot mandate that the commission should have understood the applicant intended to limit his activities to the examples set forth by Ms. Slayback or that the Commission should have granted the application by crafting conditions which would have limited it to accessory work. That is the obligation of the applicant.
Nor can the court itself modify the application or sustain the appeal by imposing its own conditions.
The appeal, therefore, is dismissed.
NIGRO, J.