[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiffs, R.C. Associates (hereinafter "RCA" or "plaintiff") and Rosedale Farms (hereinafter "Rosedale") bring this two-count appeal pursuant to Conn. Gen. Stat. 8-8 from the decisions of the defendant, the Zoning Board of appeals of the Town of West Hartford (hereinafter "Board" or "defendant") denying RCA's appeal of a cease and desist order (Count I) and denying RCA's application for a variance (Count II).
On January 5, 1987, the West Hartford Town Plan and Zoning Commission (hereinafter "Commission") held public hearings regarding RCA's application for a special use permit to remove old buildings located at 2600 Albany Avenue, which is in an "R-13" residential zone, and to build "a new single building with permanent greenhouse . . . to serve the needs of this traditional retail garden center/nursery operation." On May 20, 1987, the Commission issued a special use permit to RCA to conduct a "Garden Center, nursery and landscape service with accessory greenhouses including the retail sale of home garden and nursery items customarily, commonly, habitually and by long practice established as reasonably associated with the primary use."
On September 11, 1987, RCA submitted to the Town a list of items which it intended to sell on the premises. Upon review, the corporation counsel's office concluded that the list submitted by RCA exceeded ". . .both the scope of the Special Use Permit issued by the TPZ . . . and the scope of a permissible nursery use in a residential zone."
On October 2, 1987, the building inspector issued a temporary certificate of occupancy to RCA for the building at 2600 Albany Avenue which provided that "[u]ses maintained in this structure shall be limited to those allowed by the Special Use Permit which are included in the attached list" The list of permitted items sent to RCA, according to a memorandum from Assistant Corporation Counsel Critton to Town Planner Foster, "includes only those items which we believe were sold by the nursery prior to the issuance of the Special Use Permit. . . This comports with the apparent understanding of the TPZ, as expressed at the public hearing of January 5, 1987 that the `operation would be the same as it is now.'" According to Attorney Heagney, counsel for RCA, the produce and farm-related products that had been traditionally sold on the property were excluded specifically CT Page 7226 from the permitted list. On October 5, 1987, RCA's tenant, Rosedale, was served with a cease and desist order for "[s]elling . . . non-permitted items from Temporary C. O. of 10/2/87", which allegedly constituted a violation of sections 177-39(D) and 177-42(A) of the West Hartford Zoning Regulations.
On October 13, 1987, RCA appealed the issuance of the cease and desist order to the Board, alleging that said order failed to allow accurately the continuation of the permitted and approved uses of the premises. On October 29, 1987, RCA filed an application for a variance of section 177-6(B) (schedule of permitted main uses) to allow two main uses on a property where a Special Use Permit exists for a nursery main use as permitted in section 177-6(B)(15) of the Zoning Ordinance, and an additional main use as a farm is desired under section 177-6(B) (14)," On November 18, 1987, the Board held public hearings on both the appeal of the cease and desist order and the variance application. On November 23, 1987, the Board voted to deny both the appeal of the cease and desist order and the variance application. Notices of the Board's decisions were published in the West Hartford News on December 3, 1987. The plaintiffs timely served the defendants with the appeal papers on December 9, 1987, and filed this appeal of the Board's decisions on December 10, 1987, which dates are well within the fifteen day statutory appeal period.
In its substituted appeal brief dated November 28, 1989 (see footnote 1, below), RCA argues that the decision of the Board had been unreasonable, arbitrary and illegal in that the cease and desist order failed to meet the statutory requirement of apprising the party to which it is addressed of the condition which must be remedied, pursuant to Conn. Gen. Stat.8-12; that the attachment to the temporary certificate of occupancy of a list of products by the building inspector had been unauthorized; and that the sections of the zoning regulations cited in the cease and desist order could not have been violated as these sections had nothing to do with use of a premises. See plaintiffs' appeal brief of November 28, 1989 (emphasis in original). RCA further contends that the Board had been influenced by the participation of Robert Gross, a member of the West Hartford Town Council, which also acts as the zoning commission; Donald Foster, the town planner; and Adore Flynn Kurtz, the zoning enforcement officer (hereinafter "ZEO"). RCA also claims that the use of a portion of the garden center for the retail sale of farm produce, fruits, vegetables, food and dairy products is clearly within the scope of accessory uses for garden center/nursery and farm use as used in the W.H.Z.R.
The defendant maintains, in its brief dated December 4, 1989, that the Board's decisions were amply supported by the record and were not illegal, arbitrary or in abuse of its discretion inasmuch[4]
See discussion infra, at p. 8 herein, regarding Motion to Strike said brief. CT Page 7227 as the Board's decisions were amply supported by the record and were not illegal, arbitrary or in abuse of its discretion. More specifically, the defendant contends that the notice of the cease and desist order was adequate, that the "grocery/convenience store" is not a permitted accessory use and that the testimony of Gross, Foster and Kurtz was not improper.
A hearing was held before this court on July 30, 1990. At the hearing, to show aggrievement RCA presented the testimony of Jeffrey Linfert, who testified that he was then one of three general partners of RCA. Linfert testified that RCA owned the 4.3 acre parcel of land in question and that RCA had lost its lease with Rosedale because of the zoning problems, resulting in lost income and financial detriment to RCA.
While a decision on this appeal was pending, RCA conveyed the property which is the subject of this appeal to a third party by warranty deed dated April 5, 1991. The defendant filed a motion to dismiss which was heard before this court on June 14, 1991. Since the cease and desist order on its face provides for fines and penalties and the defendant did not state that it would not seek to enforce the "Penalties" provision of the cease and desist order, there is a possibility that some legally protected interest continues to be adversely affected. See Hall v. Planning Commission, 181 Conn. 442, 445
(1980). The plaintiff continues to be aggrieved with respect to the first count of its appeal which challenges the upholding of the cease and desist order. (See Part II of Memorandum of Decision on Motions to Dismiss, filed of even date herewith, wherein said motion to dismiss in regard to said cease and desist order is denied).
However, the plaintiff offered no evidence or authority in support of its claim that it continues to be aggrieved by the Board's denial of its variance application. The second count of the complaint must be dismissed for lack of aggrievement. (See Section III of Memorandum of Decision on Motions to Dismiss filed of even date herewith.)
Rosedale Farms was named as a plaintiff in this appeal. However, Rosedale has neither filed a brief, appeared at any of the hearings on this appeal, nor offered any proof of aggrievement. Both counts of this appeal must be dismissed as to Rosedale.
PRELIMINARY MATTERS
Defendant's Motion to Strike
On November 9, 1989, the defendant moved to strike from RCA's appeal brief filed October 31, 1989, all references to exhibits and matters outside of the records of the Zoning Board of Appeals decisions, CT Page 7228 including all references to proceedings which had taken place after the Zoning Board of Appeals decision of November 23, 1987. The defendant requested that the plaintiff's brief of October 31, 1989 be removed from the court's file pertaining to this appeal. The plaintiff filed no memorandum in response to the defendant's motion.
On November 27, 1989, the court, Hammer, J., after oral argument, denied the defendant's motion without prejudice and stated in his order that since the plaintiff's brief exceeded thirty-five pages in violation of Conn. Practice Book 257, it would not be considered "unless the court gives permission for good cause shown for the filing of a brief of that length." RCA thereafter filed on November 28, 1989 a substituted brief which complied with the thirty-five page limit.
On November 28, 1989, the defendant moved for permission to submit a brief in excess of thirty-five pages. The plaintiff filed an objection on December 1, 1989, arguing that plaintiff had "reduced the size of its brief to 34 pages and filed the reduced brief as a substituted brief." On December 11, 1989, the court, Ripley, J., overruled RCA's objection and granted the defendant's motion to submit a brief of up to fifty pages, but also stated that, "[in] view of this. ruling, the plaintiff is also permitted to submit a 50-page brief." The plaintiff never filed a new brief after this ruling, nor did it refile the longer October 31 brief. At the July 30, 1990, hearing, the defendant renewed its motion to strike the plaintiff's October 31 brief.
A motion to strike is an improper vehicle for challenging material discussed in a brief. A motion to strike challenges the legal sufficiency of a pleading. Conn. Practice Book 152 see Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). A brief submitted in a zoning appeal proceeding is not a pleading. See Conn. Practice Book 112. Nor are zoning appeal proceedings included within the scope of Conn. Practice Book, 257(d), thereby rendering a motion to strike in a zoning appeal inappropriate. Planning Zoning Commission v. Zoning Board of Appeals, 2 Conn. Super. 652 (1987); and Fazzano v. Cromwell P Z Commission, 2 Conn. Super. 653 (1987).
The motion to strike is denied, and the Court regards the substituted brief of November 28, 1989 as the applicable brief of the plaintiff, pursuant to the stipulation of the parties at the trial.
APPEAL OF THE CEASE AND DESIST ORDER
Upon appeal, the trial court reviews the record before the board to determine whether or not it has acted fairly or with proper motives or upon valid reasons. Adolphson v. Zoning Board of Appeals,205 Conn. 703, at 707 (1988). The decision of a zoning authority will CT Page 7229 only be disturbed if it is shown that it was arbitrary, illegal or an abuse of discretion. Torsiello v. Zoning Board of Appeals, 3 Conn. App. 47,50 (1984); see also, Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,572-73 (1988). If one of the stated reasons of the board is sufficient to support its decision, that decision must be upheld. Torsiello, supra, at 49. The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs. Adolphson, supra, at 703.
Conn. Gen. Stat. 8-6 (1) grants to zoning boards of appeal the power and duty to hear and decide appeals where it is alleged that there is an error in any order, requirement or decision of the zoning enforcement officer. Conn. Gen. Stat. 8-6 (1); see Country Lands, Inc. v. Swinnerton, 151 Conn. 27, 32 (1963). This power is vested in a zoning board of appeals, both to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment. Country Lands, Inc., supra, at 33-34; see also Greenwich v. Kristoff,180 Conn. 575, 578 (1980). The board is entrusted with the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. Toffolon v. Zoning Board of Appeals, 155 Conn. 558,560 (1967). The function of the trial court is to decide whether or not the board correctly interpreted the section and applied it with reasonable discretion to the facts. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether or not it was unreasonable, arbitrary or illegal. Toffolon, supra, at 560-561; see Connecticut Sand and Stone Corp. v. Zoning Board of Appeals, 150 Conn. 439, 442 (1963).
The Board in this case found that the ZEO "did not act in an arbitrary or capricious manner in issuing the Cease and Desist Order" because:
 a. The testimony of the public hearing revealed that the applicants and agent understood how the temporary Certificate of Occupancy restricted the; business activities;
b. . . . the notice of the Cease and Desist Order was adequate;
 c . . . . the transcript of the January 5, 1987 Wetland hearing and Special Use Permit hearing did not review plans for Rosedale Farm activities or a green grocer operation.
(C D Record Item 25). CT Page 7230
(A)
 WHETHER A REVIEW OF PLANS FOR ROSEDALE FARMS ACTIVITIES OR FOR A GREEN GROCER OPERATION WAS PRESENTED AT THE JANUARY 5, 1987 PUBLIC HEARING BY PLAINTIFF-APPLICANT
The plaintiff argues that R. C. Associates could not have violated sections 177-39(D) or 177-42(A) of the W.H.Z.R. as it possessed an approved special use permit and that accordingly any finding by the Zoning Board of appeals that R. C. Associates had violated these sections is unreasonable, arbitrary or illegal. The plaintiff appears to assume that the special use permit issued to RCA allows it to sell the food products which it had been ordered to stop selling. The "Description of Action" in the special use permit provided for a "Garden Center/nursery and landscape service with accessory greenhouses including the retail sale of home garden and nursery items customarily, commonly, habitually and by long practice established as reasonably associated with the primary use." RCA apparently contends that its "retail sale of farm produce, fruits, vegetables, food and Dairy products" constitutes an accessory use approved by the special use permit under the language "retail sale of home garden and nursery items customarily, commonly, habitually and by long practice established as reasonably related to the primary use." The plaintiff also argues that the evidence presented at the hearings clearly established that the retail sale of fruit, vegetables, food and Dairy products had been established on the nursery/garden center premises for the long history of the Cascio nursery/garden center; that the ZEO and town planner had considered the Rosedale Farms activity an accessory use as late as August 21, 1987; and that the sale of food products on the property had been reviewed by the Commission because "[t]he buildings plans clearly identified the use of approximately 1,500 square feet for retail sales of produce."
A careful examination of the record of the January 5, 1987, public hearing reveals absolutely no mention of the retail sale of food items on the premises. Further, RCA's special use permit application contained no mention of the retail sale of food items on the premises.
Town Planner Foster, who drafted the "Description of Action" in the special use permit, testified at the public hearing regarding the cease and desist order appeal:
 [T]here was never a discussion with the Commission about establishing some major segment of the buildings proposed as a large full-sale year round produce enterprise or for that matter, even beyond that what was operating today, which in my view, be pretty close to a convenience market involving the sale of commercial goods produced of CT Page 7231 promises, a long way from being a farm use. That's a bit of the background that led us to taking a look at the use as they became aware that large refrigeration were being installed inside. A specialty ice cream dispensing facility was being installed also.
Foster further testified that the language of the special use permit had been constructed so as to narrow down the scope of what was going to be offered to the nursery aspects within the historical contexts.
ZEO Kurtz testified that she had found no indication in the public hearing (transcript of January 5, 1987) that a green grocer or a produce stand, or anything like what Rosedale Farms was then proposing to do, had been discussed or approved by the Town Plan and Zone Commission or even brought up. She further testified as follows:
 [T]he applicants were silent on the, so its my feeling that we go back to the testimony of the public hearing. That's that the Town Plan and Zone Commission used to make the decision. They make their decision based on the testimony. The testimony made virtually no reference to Rosedale Farms as certainly not a convenience green grocer, consequently the temporary Certificate of Occupancy was issued to those uses and sales items which I think come under what the town planner calls customarily, commonly, habitually associated with the primary use of the nursery.
(C D Record Item 6, p. 40).
There is no mention in the record of the January 5, 1987, hearing that RCA or a tenant thereof planned to sell produce as well as other food items in the future. The Board could have reasonably found that the retail sale of food products had not been discussed at the special use permit hearing and, therefore, was not a use which had been approved or even contemplated by the Commission when it had issued the special use permit.
The plaintiff contends that plans submitted to and considered by the Commission at the January 5, 1987, public hearing had clearly identified the use of approximately 1,500 square feet for retail sales of produce; that Building Inspector McCarthy had issued a building permit based upon those plans; and that the Building Department later received and approved an electrical permit to wire temporary electrical service to a vegetable stand on the property.
The record of the January 5, 1987, public hearing reflects that Jeffrey Linfert presented some "new elevations that are very close to what it's going to look like." (C D Record Item 21, p. 10). A very CT Page 7232 poor copy of the "plans" or "elevations" in the record shows an area of the building marked "produce" and "produce receiving". (C D Record Item 18). The record does not reflect whether or not the Commission members ever actually looked at these "elevations". Moreover, Mr. Linfert testified, "The focus of our new business will be what is known as a new style garden center. It grows less, but sells a greater variety of plants and related materials." (C D Record, Item 21, p. 9).
In view of the complete lack of discussion at the January 5, 1987, public hearing regarding the sale of food products on the premises, the Board could reasonably have found that the presence at the hearing of the "plans" or "elevations" with areas thereon marked "produce" and "produce receiving" did not amount to the review or approval by the Commission of the sale of "fruits, vegetables, Dairy products and related products" on the property. The presence in the record of an electrical permit application to wire temporarily a vegetable stand an application filed after the public hearing — does not constitute evidence that the Commission had reviewed and approved the sale of food items on the premises. Even if Building Inspector McCarthy did issue a building permit, the plaintiff has submitted no authority that the issuance of a building permit would allow the plaintiff to use the premises for the sale of items not reviewed by the Commission.
The plaintiff claims that the sale of food items is a "permitted accessory use" because the "evidence presented at the hearings clearly established that the retail sale of fruit, vegetables, food and Dairy products had been established on the nursery/garden center premises for the long history of the Cascio nursery/garden center". The evidence on the record does not, however, support said contention of the plaintiff. Even if such sales had in fact been previously conducted on the premises, however, such sales would have been outside the scope of the special use permit which was issued, since the Commission had never reviewed the sale of food items at the special use permit hearing.
The record reveals that the only testimony regarding the previous sale of Dairy products on the premises was that of Attorney Blume, counsel for Rosedale. Two area residents testified that there had been sales of "cider and corn" and "produce" on the property in the past. Poster testified that the staff had been aware of a "seasonal stand" on the property previously. The town staff further testified that no zoning or building permits had ever been previously issued for a farm stand on the property.
The record does not reflect the previous sale of the variety of food products that the plaintiff apparently sought permission to sell, nor does it reflect anything of the magnitude of the indoor year round operation which the plaintiff seemingly intended to operate on the premises. CT Page 7233
The plaintiff asserts that the ZEO and town planner considered the Rosedale Farms activity an accessory use as late as August 21, 1987. A memorandum from ZEO Kurtz to Robert Gross states that "[i]t is Foster's opinion (and mine) that the selling of produce is an accessory to Cascio's. . ." This memorandum does not mention Dairy products or any food items other than produce. The fact that the town staff was aware of a seasonal stand on the premises in the past and had at one time considered the sale of produce to be an accessory use does not mean that the Commission, following a hearing where the sale of food items had never been discussed, had approved of such sales.
Under section 177-6(C) of the West Hartford Zoning Regulations, the Schedule of Permitted Accessory Uses includes the language at Number Nine therein, "any accessory building or use"; and the footnote thereto expressly states that any use marked "X" is a permitted accessory use subject to the same permits and review procedures as the main use to which it is an accessory. (C D Record, Item 6, Section 177-6(C), Schedule of Permitted Uses at end of section, footnote "c" under "key". Emphasis supplied.) The record fails to disclose any evidence that the plaintiff has sought, by way of another special use permit application, a determination by the Commission as to whether the retail sale of food products is a "permitted accessory use" to the main use of garden center/nursery. In view of the lack of any evidence in the record that the sale of food items has ever been reviewed by the Commission as required by said language in the Schedule of Permitted Accessory Uses, plaintiff's claim that such a use is a permitted accessory use must fail.
For the foregoing reasons, this court concludes that the Board's finding — that plans for Rosedale Farm activities or a green grocer operation were never reviewed at the January 5, 1987, public hearings — is fully supported by the record and is not illegal, arbitrary or an abuse of its discretion.
(B)
 WHETHER THE PLAINTIFF WAS PROPERLY APPRISED ON THE TEMPORARY CERTIFICATE OF OCCUPANCY THAT PRODUCE AND FARM-RELATED PRODUCTS WHICH HAD BEEN TRADITIONALLY SOLD ON THE SUBJECT PROPERTY WERE SPECIFICALLY EXCLUDED
The plaintiff argues that the cease and desist order fails to meet the statutory requirement of apprising the party to which it is addressed of the "condition" which must be remedied. The plaintiff claims that the cease and desist order fails to identify as does the entire Record on Appeal what specific items were not permitted to be sold and were thus in violation of the zoning regulations."
Conn. Gen. Stat. 8-12 provides, in part :
[T]he officer or official board or authority . . . shall be CT Page 7234 authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter.
Attorney Heagney testified at the November 18, 1987, cease and desist order appeal hearing as follows:
 R. C. Associates was asked to submit a list of items that they intend to sell on the property and they did so. Thereafter, on October 7th a Temporary Certificate of Occupancy was issued to R.C. Associates, — which had a limiting list of products that could be sold on the property. Excluded specifically, were the produce and farm rented products that had been traditionally sold on the property.
(C D Record Item 6, pp. 8-9) Attorney Heagney's testimony establishes that RCA knew that the items that the Town would not permit to be sold were the "produce and farm related products" and knew that the sale of these items was the subject of the cease and desist order. Accordingly, the Board's findings — that "[t]he testimony of the public hearing revealed that the applicants and agent understood how the Temporary Certificate of Occupancy restricted their business activities" and that "notice of the Cease and Desist Order was adequate" — were not illegal, arbitrary or an abuse of discretion.
The plaintiff argues that "[t]here could be no possible violation of 177-39(D) or 177-42(A) as these sections have nothing to do with the use of a premises." (Plaintiff's brief, pp. 20-21) (Emphasis in original). W. H. Z. R. 177-39(D) provides:
 A certificate of occupancy issued for a structure or use permitted as a special permit use after approval by the Planning Commission shall include any conditions under which such special permit use was granted.
(C D Record Item 26). W.H.Z.R. 177-42(A) provides the standards and procedures governing special use permits. Sec. 177-42(A)(5) provides:
 The Planning Commission shall make a finding that each of the following standards is met and, where necessary, shall attach specific conditions to its approval of the special use permit if, in its opinion, such conditions are essential to making the finding that:
 (a) The location and size of the use, the nature and intensity of the operations connected with it, the size of the lot in relation to it and the location of the lot with respect to streets giving access to it are such that it will be in CT Page 7235 harmony with the appropriate and orderly development of the district in which it is located. (b) The kind, location and height of all structures and the nature and extent of the landscaping on the lot are such that the use will not hinder or discourage the appropriate development and use of adjacent properties. (c) The parking and loading facilities are adequate and properly located for the proposed use, and the entrance and exit driveways shall be laid out so as to achieve maximum safety.
(C D Record Item 26).
The plaintiff fails to cite any support or offer any evidence for its contention that these sections of the W.H.Z.R. have "nothing to do with the use of property" or its claim that citing the violation of those sections on the cease and desist order failed adequately to apprise RCA of why the order was being issued. The plaintiff's bare assertion that there could be no possible violation of those sections of the W.H.Z.R., without any evidence or authority cited for its position, fails to meet the plaintiff's burden of proving that the Board acted illegally, arbitrarily or in abuse of its discretion in finding that the notice of the cease and desist order was adequate.
(c)
 WHETHER THE BOARD OF APPEALS WAS IMPROPERLY INFLUENCED BY THE PARTICIPATION AND/OR STATEMENTS OF ROBERT GROSS, DONALD FOSTER AND ADORE KURTZ AT THE BOARD OF APPEALS HEARINGS
The plaintiff claims that the Board was influenced by the participation of Robert Gross, a member of the West Hartford Town Council, which also acts as the Town's zoning commission; that Gross initiated the Cease and Desist proceeding by letter dated August 20, 1987 ; that he had written on West Hartford Town Council letterhead purporting to represent two complainants of the Town; that he had been kept up to date on the Cascio matter and had been invited to and had attended a meeting between the zoning Enforcement Officer and R.C. Associates regarding the zoning issues; and that he had appeared at the Z.B.A. public hearing and had spoken in opposition to the Cascio-R.C. Associates appeal as an elected member of the local government, having received numerous complaints and that he (Gross) had gotten involved. The plaintiff thus claims that Gross had violated Conn. Gen. Stat., 8-11 or 8-21 in having allegedly represented the position of others before that board.
The plaintiff also maintains that Town Planner Donald Foster had violated Conn. Gen. Statutes, 8-11 or 8-21, in representing the position of others before that board. CT Page 7236
The plaintiff further contends that the conduct of Zoning Enforcement Officer Adore Flynn Kurtz, while acting as secretary to the Board of Appeals at the November 18, 1987, hearings, had violated Conn. Gen. Statutes, 8-11a, which provides that no person may serve as a zoning enforcement officer in any municipality wherein he is a member of the zoning board of appeals.
The defendant claims that the record is wholly devoid of any evidence indicating that Gross had any personal or financial interest in the outcome of the hearing, or that Gross had any personal contacts or associations with the plaintiff's opponents; that Gross had spoken simply as an individual, as someone who had ". . . lived in this town for forty years within three miles of this area" and who had ". . . patronized Cascio's for perhaps close to forty years" and who ". . . knew the nature and extent of various uses on the property." The defendant argues that Foster acted as secretary to the Commission, but was not a "member" of a commission who is restricted from appearing at a hearing in a representative capacity under either Conn. Gen. Stat. secs. 8-11 or 8-21. The defendant further maintains that the participation of Kurtz was wholly consistent with her function as secretary to the board and has not been shown to have prejudiced the plaintiff.
Conn. Gen. Stat. sec. 8-11 provides, in part:
 No member of any zoning commission or board and no member of any zoning board of appeals or of any municipal agency exercising the powers of any zoning commission or board of appeals . . . shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission or board or said board of appeals or any agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the board or commission hearing such matter.
Conn. Gen. Stat. sec. 8-21 provides, in part :
 No member of any planning commission and no member of any municipal agency exercising the powers of any planning commission . . . shall appear for or represent any person, firm or corporation or other entity in any matter pending before the planning or zoning commission or zoning board of appeals or agency exercising the powers of any such commission or board in the same municipality, whether or not he is a member of the commission hearing such matter.
(1)
PARTICIPATION OF ROBERT GROSS CT Page 7237
The letter with which the plaintiff claims that Gross initiated the cease and desist proceeding is not part of the record, nor did the plaintiff seek to have it made a part of the record or to introduce it at the hearing pursuant to Conn. Gen. Stat. 8-8 (e). The only communication in the record involving Gross with respect to Rosedale Farms consists of an office memorandum from Kurtz to Gross dated August 21, 1987, which stated, "I have spoken to Don Foster regarding the signage and publicity for Rosedale Farms you had complained about." In the memorandum, Ms. Kurtz also invited Gross to join her when she met with the manager on August 31, 1987. To the extent that the plaintiff's argument regarding any improper representation or participation by Gross relies upon a letter which is not part of the record, the plaintiff has failed to meet its burden of proving any impropriety because the court may not consider an argument based upon evidence outside the record. The memorandum from Kurtz to Gross which is part of the record fails to reveal any improper appearance for or representation of others in a "matter pending before the . . . board." See Conn. Gen. Stat. 8-11, supra. Gross testified against the cease and desist order appeal at the public hearing on November 18, 1987. At said hearing, Gross stated follows:
 . . . I did sit in as the letter indicated I was invited when the Petitioner or co-petitioner was brought is to discuss the violations. Very early it was read to the doctor, what was a violation and the proper procedure and it may be deceptive, but having lived in this town for 10 years within three miles of this area and having patronized Cascio's for perhaps close to 40 years, in fact they put our fence in at one time 30 years ago . . .
(C D Record Item 6, pp. 64-65). Gross further stated,". . . and I as an elected member of a local government, have received numerous complaints and that's how I got involved." (C D Record Item 6, P. 65).
Conn. Gen. Stat. sec. 8-11 has two principal prohibitions. First, it prohibits members of a zoning board or commission from sitting on applications before that board in which they have an interest. The second prohibition is aimed at board or commission members or alternates who act on behalf of, or as spokesmen for, third parties.
 The words of the statute do not refer to a prohibition against appearing before or against an application, however, but merely prohibit `appear(ing) for or represent(ing) any person, firm, corporation . . . in any matter pending. . .' The focus of the prohibition is the representation of others. . . [W]hen the legislature used the phrase `appear for or represent', its purpose was to prevent the member from acting for or on CT Page 7238 behalf of others, and not from speaking for himself on an application affecting his own property. If it is intended to prevent any zoning board member individually from either making an application or speaking against an application, the legislature could have accomplished that end without using the phrase `appear for or represent any person.'
Massimo v. Planning Commission, 41 Conn. Sup. 196, 199.
Other than a vague reference by Gross to his having received "numerous complaints", there is no evidence in the record to support the plaintiff's argument that Gross appeared for or represented any person, firm, corporation or other entity at the public hearings in violation of Conn. Gen. Stat. secs. 8-11 or 8-21. Gross's reference to his position as an elected official and his presence at a meeting between Kurtz and the manager fail to establish that he appeared for or represented anyone other than himself or that the Board was improperly influenced by his testimony at the public hearings. Moreover, plaintiff did not object at the hearings to Gross's testimony. Modern procedural concepts regard with disfavor the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, the assignment of such errors as grounds for appeal. Lurie v. Planning and Zoning Commission, 160 Conn. 295, 311 (1971).
Even if the plaintiff could establish that Gross's testimony had violated Conn. Gen. Stat. secs. 8-11 or 8-21, "the statute[s] neither make . . . [such] action a crime nor render . . . the board's reception of his evidence a reason" for sustaining the appeal. Luery v. Zoning Board of Appeals, 150 Conn. 136, 147 (1962); and see Lurie, supra, at 311. The plaintiff has failed to demonstrate how Gross's testimony was prejudicial to the plaintiff or how it improperly affected the Board's decision. The plaintiff's bare assertion that Gross's testimony influenced the Board fails to meet its burden of proving that its appeal should be sustained based upon the testimony of Gross at the hearing. See Luery, supra, at 147.
Finally, as discussed above, the reasons cited by the Board for denying the cease and desist order appeal are fully supported by the evidence in the record without any consideration of Gross's testimony. Even if Gross's testimony had violated Conn. Gen. Stat. secs. 8-11 or8-21, it would at most constitute harmless error because the action of the Board is adequately supported by assigned reasons not based on the allegedly tainted evidence. First Hartford Realty Corp. vs. Plan and Zoning Commission, 165 Conn. 533,545 (1973). Accordingly, the plaintiff's appeal cannot be sustained on the ground that the Board was improperly influenced by Gross's testimony or participation.
PARTICIPATION OF DONALD FOSTER CT Page 7239
The plaintiff cites no evidence or authority for its contention that Foster's testimony at the hearings violated sections 8-11 or8-21. While the record reveals that Foster is the town planner and acts as secretary to the Commission, the plaintiff has offered no evidence or authority that, as secretary, he became a member" of said board or commission and was thereby prohibited from appearing for or representing others under sections 8-11 or 8-21, or that he, in fact, appeared for or represented others at the hearing. Accordingly, the plaintiff's appeal cannot be sustained on this ground.
PARTICIPATION OF ADORE KURTZ
The plaintiff has cited no evidence or authority for its assertion that Ms. Kurtz violated Conn. Gen. Stat. sec. 8-11a by serving as Zoning Enforcement Officer and as secretary to the board. The plaintiff has offered no evidence or authority that, as secretary, Kurt was also a "member" of the Board, or that Kurtz's participation at the hearings was in any way improper or prejudicial. Accordingly, the plaintiff's appeal cannot be sustained on this ground.
For the foregoing reasons, the plaintiff's appeal of the cease and desist order is dismissed.
By the Court, Doyle, J
[EDITORS' NOTE: FOOTNOTE 4 IS OMITTED FROM THE OFFICIAL COPY OF THIS DOCUMENT, THEREFORE IT IS NOT DISPLAYED IN THE ONLINE VERSION.]